## JEREMIAH CHALKER *against* STEPHEN CHALKER.

*Hartford,*
June, 1814.

Conn.
1   79
58  187

1   79
74  635

THIS was an action of disseisin, to recover certain lands specified in the declaration. Issue was joined on the plea of *No wrong nor disseisin.* The cause was tried at *Haddam, December* term, 1813, before *Mitchell,* Ch. J. and *Trumbull* and *Ingersoll,* Js.

The defendant, in proof of title to the lands in question, produced in evidence a deed, duly executed by the plaintiff, on the 25th of *October* 1805, in which the plaintiff, in consideration of his love and affection for *Anne,* widow of his brother *Stephen Chalker,* deceased, and the children of said *Stephen* and *Anne,* granted and conveyed the premises to said *Anne* and said children, and their heirs forever, with covenants of seisin and warranty, to which a condition was annexed in these words : " Provided nevertheless, and these presents are so conditioned, that the said *Anne,* and the children of said *Anne* and *Stephen* shall annually pay to said *Jeremiah* the sum of fifty dollars, during his natural life, but on default of such payment yearly, or annual payment of said fifty dollars, to said *Jeremiah,* this instrument shall be void, and of none effect." It appeared that the annual payments were duly made until *October* 1808, but that the money for the year ending the 25th of said *October* remained unpaid until the 30th of said *October,* when the same was paid to said *Jeremiah,* the plaintiff, who received and gave his receipt for the same ; and afterwards, in the same manner, received the annuity due *October* 1809. It was also proved, that the select-men of *Durham,* by their instrument in writing, dated *May* 15th, 1807, under their hands, appointed *Jabez Chalker* overseer of the plaintiff, to advise and order him in the management of his business from and after the date of said instrument, without limitation of time ; and that said *Jabez* accepted the appointment, and in said capacity, on said 30th of *October* 1808, refused to receive said fifty dollars, and claimed that said lands had revested in the plaintiff by the terms of said deed. Upon these facts the court charged the jury, that although the money was not paid until the 30th of *October* 1808, yet the estate had not so revested in the plaintiff that he could sustain this action without having first

The appointment of an overseer must be for a reasonable time expressly limited ; otherwise it is void.

Where an estate of freehold is granted upon condition in deed, and there is a breach of the condition, an actual entry or claim by the grantor is necessary in order to revest the estate.

The bringing an action of disseisin is not a claim within the meaning of the law, nor a sufficient substitute for entry.

Where there is a forfeiture of an estate of freehold upon condition, for non-payment of an annuity, if the grantor subsequently accept the sum due, such acceptance is in law a waiver of the forfeiture ; and a forfeiture once waived can never afterwards be claimed.

*Hartford,*
June, 1814.

Chalker
*v.*
Chalker.

made entry upon a claim to the lands; and that said appointment of overseer was, on said 30th of *October,* void and of no effect, and said *Jeremiah,* notwithstanding the same, might well receive said money, and waive said forfeiture. In pursuance of this direction, the jury found a verdict for the defendant. The plaintiff thereupon moved for a new trial; and the questions arising on such motion were reserved for the advice of all the Judges.

*Staples,* in support of the motion, contended, 1. That at the time the payment of 50 dollars was made to *Jeremiah Chalker, viz.* on the 30th of *October* 1808, he was under an overseer, and could not legally receive it. The statute(*a*) has not limited the time for which an overseer may be appointed, but has expressly authorized the select-men to make the appointment for such time as they shall think proper. But if it was not good, it was only *voidable;* and no one but *Jeremiah* has any right to complain. He, if aggrieved, may apply to the next county court for relief;(*b*) but until they grant relief, the appointment is valid.

2. That whether *Jeremiah* was or was not under an overseer, if the money was not paid at the day, the estate revested in him, and a subsequent payment could not devest it, and set up the deed.

3. That in this case there was no need of an entry or claim previous to bringing the action. To shew what is an entry and what a claim, he referred to 2 *Black. Com.* 312 to 316. 3 *Black. Com.* 175.; to shew in what cases this is a remedy, to *Litt. sect.* 347. *Co. Litt.* 214. *b. Cruise's Dig. tit.* 13. *c.* 2. *s.* 42. [2nd vol. p. 49.] 1 *Wms. Saund.* 287. *n.* (16). *Shep. Touch.* 154.; and then insisted, that this doctrine is inapplicable in *Connecticut,* where livery of seisin and attornment are unknown to the law; where the heir, upon descent cast, may bring ejectment, without entry; and where it has been established as a general maxim with regard to real estate, that ownership draws after it the possession.(*c*) Here an estate of freehold may begin and end without ceremony as well as a lease for years. Adopt then the *principle* of

(*a*) *Tit.* 88. *c.* 1. *s.* 8.　　　　　(*b*) *Sect.* 15.

(*c*) Vide *Hillhouse* v. *Chester,* 3 *Day's Ca.* 166. *Bush* v. *Bradley,* 4 *Day's Ca.* 298, 306.

Lord *Coke*, and the doctrine resulting from it under our law will be totally diverse from the *English* doctrine. What Lord *Coke* says of a lease for years in *England* is precisely applicable to the deed in question : " By the breach of the condition, it was *ipso facto, without any entry,* void." *Co. Litt.* 214. *b.*

*Hartford,* June, 1814.

*Chalker v. Chalker.*

Further, if a claim were necessary in order to revest the estate in the grantor after condition broken, the bringing an action claiming the land is sufficient.

*Hosmer\** contra, contended, 1. That the estate granted, by breach of the condition was *defeasible* only, and could not be defeated without *entry* or *claim.* He defined a *condition in deed* to be " where an estate of freehold is granted, on a qualification annexed, whereby the same *may* be defeated ;" and a *limitation* to be " where an estate is limited by the words of its creation, so that on the happening of the event specified, it *must* be defeated." 2 *Black. Com.* 154, 5. The former is created by words of condition without limitation, such as " upon condition," " provided," &c. ; the latter is created by words of limitation, such as " so long as," " while," " until," &c. The effect of a limitation is an *absolute* defeasance of the estate *by operation of law ;* the effect of a condition broken is to render the estate defeasible at the option, and by entry, of the grantor. *Litt. sect.* 328, 9, 30. 380. 325. 350, 1. *Co. Litt.* 217. *b.* 218. *a. b.* 2 *Black. Com.* 155. 1 *Swift's Syst.* 264. *Doe* d. *Lockwood* v. *Clarke,* 8 *East* 185. *The People* v. *Brown,* 1 *Caines* 426. *Lincoln and Kennebeck Bank* v. *Drummond,* 5 *Mass. Rep.* 321. He then insisted, that this was a condition in contradistinction to a limitation ; and that of course, a breach of the condition, without entry or claim, would not devest the grantee of his title.

2. That the forfeiture was dispensed with by reception of rent after breach of the condition. After enforcing this proposition, he examined into the objection that the plaintiff at the time of receiving the rent was under an overseer ; contending, first, that the appointment was void ;(*a*) and second-

---

\* *R. M. Sherman* was to have argued on the same side, but was under the necessity of leaving town before the case came on.

(*a*) 1 *Root* 246. *Waters* v. *Waterman,* 2 *Root* 214.

ly, that if the plaintiff were under an overseer, still he had right to receive the money, and the waiver was of legal operation.

3. That the reception of the rent on a day posterior to the breach, in prevention of an odious forfeiture, will be considered as conclusive evidence of a precedent agreement to postpone payment.

Lastly, that a new trial will not be granted against equity, when it is apparent that chancery will compel a re-execution of the deed.

TRUMBULL, J. [After stating the case.] Upon this motion three questions are presented ; 1. Whether this appointment of the overseer was void ? 2. Whether, supposing it void, an entry on the land is by law necessary in order to revest the estate ; and whether the plaintiff by accepting said payment on said 30th day of *October*, hath by law waived the forfeiture to which he was entitled by the neglect of payment on the 25th, and thereby lost his right of entry and claim ? 3. Whether an entry or claim on said lands by the plaintiff was necessary, before he could sustain an action of disseisin, according to the principles and practice adopted in this state ?

The power given to the select-men by our statute, to adjudge by a summary decision, that any person in their town is likely to be reduced to want by idleness, mismanagement and bad husbandry, and to disable him from making any bargain or contract, by the appointment of an overseer to order him in the management of his business, is so extensive in its nature, so liable to abuse, and so derogatory to the liberty of the subject, that it ought never to be extended, beyond what is clearly warranted by a strict construction of the statute. It is in terms declared to be for the purpose of reforming its object, and the appointment is expressly to be made for such time or times as the select-men shall think proper. An appointment to take place from its date, and continue without limitation, is not an appointment for a term of time, but for the joint lives of the disabled person and his overseer. See *Waters* v. *Waterman*, 2 *Root* 214., where such an appointment was declared to be illegal. *Johnson* v.

*Stanley* and others, 1 *Root* 245. 1 *Swift's Syst.* 122. *Knapp* v. *Lockwood*, 3 *Day's Ca.* 131.

It seems also evident from the whole purview of the laws on this subject, that it could not be the intention of the legislature, to empower the select-men to make unlimited appointments. The statute neither gives to them nor their successors any power to annul their proceedings, and restore the party to his ability of making contracts, and managing his own affairs. His only remedy is by complaint to the next county court, in the county where he dwells ; which can only be the next court after the appointment ; and should he omit, or fail in that application, he is left wholly without remedy, even in case of his reformation, unless we give such construction to the statute, that the appointment must be made for a reasonable and limited time, and cease when that is expired. See statute, *tit.* Idiots, *c.* 1. *s.* 8, 15 and 16.

I am therefore clearly of opinion, that the appointment in the present case is not conformable to the statute, and is therefore illegal and void. But I do not hold that select-men cannot appoint overseers for a longer time than their own continuance in office. The statute gives them the power of determining the time, and they may have good reasons in particular instances, to adjudge a greater period proper and necessary. It is sufficient that they decide reasonably on the causes and matters before them. No sentence of any court becomes void, merely on the expiration of the judge's commission.

In respect to the necessity of actual entry or claim in order to take advantage of the forfeiture and revest the estate, it may be proper to enquire what were the rules of common law as to seisin and transfers of land, what alterations have been made in them by the *English* statutes, and what in this state, by our own statutes, or practice.

In the early periods of *English* jurisprudence, the want of public registers, the ignorance of forms, and general incapacity of the common people to read or write, were supplied by solemnities, ceremonies and notoriety in their transactions, and particularly in the transfer of real estate. Lands were aliened by making livery and seisin in public before witnesses. When written forms of conveyance were introduced every practicable solemnity was required. The

feoffor affixed his seal to the instrument, and formally delivered it to the use of the feoffee. At a later period, his signature was added, by making his mark or writing his name. Still the deed of feoffment did not convey the land. It was only in nature of evidence that an actual feoffment had been made. Livery of seisin only could vest the title in the feoffee, and was still equally necessary, in all cases wherein actual seisin could be delivered. *Littleton, sec.* 66. *2 Black. Com.* 311. Hence the distinction between things corporeal which lie only in livery, and incorporeal rights which lie in grant, and pass by the delivery of the deed. The mere delivery of a deed of feoffment, without livery and seisin, gave to the feoffee a licence to enter, and nothing more; by such entry he held only as tenant at will; he who gave the deed might turn him out when he pleased, and the land descended to the heirs of the feoffor, in case of his decease before actual livery made. *Co. Litt. sec.* 70. *p.* 57. *a.*

All acts required to be done *in pais* for conveying or confirming an estate, must be avoided or annulled by some act of equal solemnity and notoriety. Every assurance, contract or agreement must be dissolved by matter of as high nature. *5 Co. Rep.* 26. *a.* An estate of freehold being created by livery cannot be determined without entry. *3 Co. Rep.* 65. *a.*

There is a diversity between a condition, that requireth a re-entry, and a limitation that *ipso facto* determines the estate without any entry. If a man make a gift in tail, or a lease for life, upon condition, that if the donee or lessee goeth not to *Rome* before such a day, the gift or lease shall cease or be void, the estate cannot cease before an entry; for an estate of freehold cannot begin nor end without ceremony. *Co. Litt.* 214. *b.* 10 *Co. Rep.* 41. *b.* 42. *a.*

" Although the words of the condition are, that upon payment of the money, the estate shall cease and shall be void, yet the estate shall not be revested in the grantor without claim; for the estate of inheritance cannot be determined by condition without entry or claim." *2 Co. Rep.* 53. *b.* " So if land be devised to a man and his heirs on condition that if he pay not twenty pounds by such a day, his estate shall cease and be void; the money is not paid, the estate shall not be vested in the heir before an entry." *Co. Litt.* 218. *a.*

" When an estate is strictly speaking upon condition in

*Hartford,*
June, 1814.

Chalker
*v.*
Chalker.

deed, as if granted expressly upon condition to be void, upon the payment of 40*l.* by the grantor, or so that the grantee continues unmarried, or provided he goes to *York,* &c., the law permits it to endure beyond the time when such contingency happens, unless the grantor, or his heirs or assigns, take advantage of the breach of the condition, and make either an entry or claim to avoid the estate." 2 *Black. Com.* 155.

By the word " claim," in the foregoing authorities is intended such claim as is called in our books *continual claim,* and is in judgment of law equivalent to actual entry. It is explained by *Littleton, sect.* 417., &c. This claim has the same effect with, and in all respects amounts to, a legal entry. 3 *Black. Com.* 175.

In the present case, by the breach of the condition, the plaintiff acquired only a right to re-enter on the land, of which he has never taken advantage.

But it is said, that these rules of law are obsolete ; that freehold estates in *England* are not now created by livery and seisin, neither were they so created in the time of Lord *Coke ;* that since the statute of *Henry* the 8th for turning uses into possession, such estates are created and conveyed, by covenant to stand seised to uses, by deed of bargain and sale with enrollment, or by the more usual conveyance of lease and release ; in all of which cases, the freehold is aliened and transferred without livery of seisin ; and hence it is argued, that it may consequently be devested without entry or claim.

But that statute does not in any respect alter the nature of freehold estates. It enacts, " that when any person shall be *seised* of lands, &c. to the use of any other person or body politic, the person or corporation entitled to the use, in fee simple or otherwise, shall from thenceforth stand and be *seised,* and be deemed and judged in lawful *seisin* and possession, of such estate to all intents," &c. By this clause, the seisin of the trustee becomes the seisin of the *cestui que use ;* but it is clear, that the trustee must first have the actual seisin before the statute can operate to transfer it to him, who has the use. Nor was such kind of transfer unknown to the common law ; as if land be leased to *A.* for years, remainder to *B.* in fee, or for life, and livery of seisin be made to *A., B.* becomes by that livery seised of the remainder,

*Hartford,*
*June, 1814.*

Chalker
*v.*
Chalker.

and the freehold immediately vests in him according to the grant. *Littleton, sect.* 60. Yet in this case *A.*, the lessee for years, could not hold the seisin of the land, as that is contrary to the nature of his estate, any more than the trustee could continue to hold it, after the passing of the statute. In each case, the lessee or trustee is merely the instrument of conveyance and transfer. This statute has, indeed, given efficacy to those new forms of conveyance which I have mentioned. In them the covenant, bargain or lease vests the use, and then the statute vests the seisin and possession in him, who has the use by the deed. Hence a conveyance by bargain and sale, or lease and release, is said to amount to a feoffment, to be equivalent to livery of seisin, and to supply its place ; for where there is already a possession, either derived from a privity of estate, or vested by the statute, any farther delivery of possession would be useless. " It shall be vain," says *Littleton, sect.* 460., " to make an estate by livery and seisin to another, where he hath possession of the same land by the lease of the same man before." See *Cro. Jac.* 604. and 696.   2 *Black. Com. chap.* 20.

Although the statute in this manner transferred the title, and vested the seisin of a freehold, without livery, still an actual entry was necessary to devest it. The ingenuity of the courts was exercised to invent some equivalent or substitute, that might save the trouble and formality, which attended the making of actual entry. This they effected not by varying or discarding any rule of the common law, but by introducing a fictitious process for trying titles in the action of ejectment. In that action, proof of actual entry is still necessary, and indeed so absolutely requisite, that ejectment cannot be maintained for an advowson, a rent, a common, or other incorporeal hereditament, where no entry in fact can be made ; nor in any case where the right of entry is taken away by descent, or otherwise. *Newman* v. *Holdmyfast*, 1 *Stra.* 54. *Herbert* v. *Laughluyn, Cro. Car.* 492. This proof is obtained by compelling the defendant to confess on record, an actual lease, entry and ouster, neither of which ever existed in fact. See 3 *Black. Com. chap.* 11.

Thus the principle of common law, that no estate of freehold can be devested without entry, has ever been holden inviolable. Such an estate is never revested in the grantor

*Hartford,*
June, 1814.

Chalker
*v.*
Chalker.

by the mere breach of the condition. The title conveyed is not void, though the deed so express the condition, but is only voidable by an act of the grantor, taking advantage of the condition, and re-possessing himself of the estate. Until he become in this manner revested, he may, by a subsequent acceptance of the sum due by the condition, or any other equivalent act, waive the forfeiture at his pleasure, and can never take advantage of it after such waiver. *Co. Litt.* 218. *a.* *Wood's Inst.* 182. 2 *Black. Com.* 156. *Shep. Touch.* 150. *Doe* d. *Lockwood* v. *Clark,* 8 *East's Rep.* 185. *Goodright* d. *Walter* v. *Davids, Cowp.* 805. 1 *Swift's Syst.* 264., &c.

But it is alleged, that however these points may be considered in the courts of *Westminster,* the rule of law is wholly different in this state ; that with us, he who has the right of possession is vested with the legal possession, and ownership is equivalent to seisin ; that a freehold lies in grant, and passes by the mere delivery of the deed of conveyance ; that in this respect, there is no distinction between property real and personal ; and that these essential alterations have been brought about by the practice and decisions of our courts, and by a common law or general custom framed and established by ourselves, for our sole use and benefit, and different from the law of any other state or country.

It is true, that by reason of the small comparative value of lands at the first settlement of *Connecticut,* many loose customs were introduced respecting them, which are frequently stated in the preambles of our earlier laws, and occasioned the enacting of a complete code on the subject ; establishing the tenures of real estate, the evidences of title, the rules of descent, and the modes of alienation. See our statute book, *tit.* Lands. In this collection, almost every general question respecting them is settled by positive statutes. Where the statute is silent, the case must be decided by the principles of the common law.

The distinction between the *English* rule and our own is thus laid down in the case of *Bush* against *Bradley* in 4 *Day's Ca.* 306. " Seisin is necessary in their law, and nothing but ownership in ours. We have always considered ownership of real property sufficient to maintain an action of trespass against every intruder, but by the *English* law actual

possession by entry is necessary. We have always consid-
ered ownership, as giving a right to possession of real prop-
erty, as much so, as ownership of personal property. Own-
ership in the one case draws after it the possession, as much
as ownership in the other ; and whenever the right of posses-
sion is lost, all title and ownership are lost." All this is
true, if we take the word, *ownership,* in its strict legal sense.
But it is a mistake to suppose from this, that our courts
have arbitrarily discarded the rules of the common law on
this subject. For I hold that in this state, we have adhered
to them as strictly in all these points, as has been done in
*England ;* and that every deviation is either directly enacted
in express words, or clearly deducible from the legal con-
struction of our own statutes.

Our form of deeds for the conveyance of lands in fee is
copied from the *English* deed of bargain and sale, with the
addition of covenants of seisin and warranty. By the stat-
ute of 27 *Henry* 8. *c.* 16. " No lands or hereditaments shall
pass whereby any estate of inheritance or freehold shall be
made, or any use thereof, by reason only of any bargain and
sale, except the bargain and sale be made by writing indent-
ed, and enrolled in one of the courts at *Westminster,* &c.,
within six months after the date of said writing." Till en-
rollment nothing except the use passes by the deed, and the
freehold is still in the bargainor. But upon enrollment the
estate vests immediately by the statute of uses, without livery
of seisin, and the bargainee, by relation, becomes seised
from the delivery of the deed. The freehold and seisin in
this case pass by the enrollment in connexion with the stat-
ute. *Bellingham* v. *Alsop, Cro. Jac.* 52. *Co. Litt.* 147. *b.*
2 *Black. Com.* 338.

In this state, the freehold of lands becomes vested, with-
out livery of seisin, by a record of the title or conveyance in
the public register of the town, in which the lands are situa-
ted. This is effected by virtue of sundry statutes.

In the year 1667, just after the reception of our charter
from the crown, and the union of the colonies of *Connecticut*
and *New-Haven,* a statute was passed whereby it was enact-
ed, That any person, who then stood possessed in his own
right in fee simple of any houses or lands, and should not be
interrupted by the prosecution of any adverse claim before

the last of *November* 1668, should have power to enter and record the same to himself, his heirs and assigns forever; and the record (attested in the manner therein prescribed) should be a sufficient and legal evidence, to every such person, for the holding the same firm to him, his heirs and assigns forever. *Tit.* Lands, *chap.* 3. Previous statutes were then in force, which ordered that all grants, bargains, sales and mortgages of houses and lands should be recorded in the register of the town, and thereon be sufficient and legal evidence for holding the same in fee. Subsequent statutes use the same expressions as to the validity of such records, and declare them to be sufficient evidence to the grantees for holding the lands to them and their heirs and assigns forever. *Tit.* Town Clerks, *chap.* 1. *sect.* 3, 4, 5, 7, and 9.*

The operative words of the statute of uses, That such persons as have the use, shall *stand and be seised* and *be judged in lawful seisin and estate* of the lands, are not more strong and effectual to supply the want of livery and seisin, than the words in ours, that the record shall be sufficient evidence for *holding the lands firmly in fee.* In this view of the subject, I agree in the proposition, that we have adopted all the beneficial principles of the statute of uses. By virtue of our statutes, a grantee in possession, under a deed so recorded,

*Hartford,*
June, 1814.

Chalker
*v.*
Chalker.

---

* The colony of *Massachusetts,* in *October* 1640, passed an act requiring all *mortgages,* and other grants of real estate *where the grantor remains in possession,* to be acknowledged before some magistrate, and recorded; otherwise, the conveyance should be of no force, except as against the grantor and his heirs. By another act passed in *May* 1652, it was provided, that no sale or alienation of real estate should be valid, "except the same be done by deed in writing, under hand and seal, and delivered, *and possession given upon part in the name of the whole,* by the seller, or his attorney so authorized under hand and seal; unless the said deed be acknowledged and recorded according to law." *Col. & Prov. Laws,* p. 85, 86. [*edit. of* 1814.] Here two modes of alienation were established; one by *livery of seisin,* and the other by *acknowledgment and recording,* as had been previously required in case of mortgages; but in no case were the execution and delivery of the deed alone sufficient. In *March* 1784, an act was passed, providing " that all deeds or other conveyances of lands, &c. signed and sealed by the party or parties granting the same, and acknowledged by such grantor or grantors before a justice, &c. and recorded at length in the registry of deeds, &c. shall be valid to pass the same, *without any other act or ceremony in the law whatever.*" *Stat. Mass.* vol. 1. p. 132, 3. [*edit. of* 1807.] Here acknowledgment and recording were required, and livery of seisin dispensed with, *in all cases;* and thus the law remains. *R.*

is not liable to be evicted by the grantor, or any other person, but has evidence of his title against all mankind. By settled construction the record is holden equivalent to livery of seisin, and is indeed much preferable in point of certainty and notoriety. 1 *Swift's Syst.* 213, 307, 308.

It was the policy of our ancestors, that all titles to real estate should be established by record. Thus, when land is taken and set off to the creditor by levy of execution, the title in fee is vested by recording in the register of the town, and in the clerk's office, of the court whence the execution issued. *Tit.* Execution, *chap.* 1. Hence if *B.* purchase by deed, or levy an execution on the land of *A.*, but neglect to record his deed or levy in a reasonable time, and *C.* make a subsequent levy of a second execution, or without knowledge of the claims of *B.*, purchase the same land and take a deed *bona fide* from *A.*, the original owner, and procure his levy or deed to be duly recorded, the title of *B.* is for ever lost and avoided; not that *B.* has forfeited his right by laches and negligence, but because it was merely inchoate, and *C.* who is in equal equity, is first vested with a complete title by record. So the title of an heir to the particular lands, to him allotted in the division of an intestate estate, is vested in him by recording the distribution in the court of probate. *Tit.* Estates testate and intestate. Actual entry and possession by the intestate in his life-time is never required in claims by descent; for the intestate, if owner, must by our statutes have been legally vested with the estate to hold to him, and his heirs forever, and this title will appear on record. A complete substitute and equivalent is thus furnished for the maxim of common law, *seisina facit stipitem.* See 3 *Day's Ca.* 210.

Our deed of quit-claim is partly copied from what is termed the *concord* in a fine levied of lands. It cannot take effect as a release unless the grantee be in possession, but is good by way of bar and estoppel, against the grantor and all who claim under him, and in case the grantor had title, it is valid to hold the estate against all persons, upon being duly recorded, in the same manner as a deed of bargain and sale.

But we have no statute, which aids, or affects any title, that must commence and accrue by entry or re-entry. Such are all titles acquired by forfeiture on breach of conditions;

they must be judged by the rules of common law, and actual entry or claim is still necessary.

I have entered more largely into this subject, than I at first intended, because on the fullest re-examination I have had leisure to make, I cannot accede to the position that our real estates lie in grant, or that any other title passes by the mere delivery of the deed, except a title by estoppel against the grantor and his heirs only. See *tit.* Town Clerks, *c.* 1. *s.* 9.

But laying aside all consideration of the necessity of entry or claim, the plaintiff must, on another ground, manifestly fail of supporting his title. Before any act claiming to take advantage of the forfeiture, he has, by voluntary agreement, accepted of the defendant the annual sum then due, and executed to him his discharge. This acceptance was by law a waiver of the forfeiture; and a forfeiture once waived can never afterwards be claimed by the party. " When a man will take advantage of a condition, if he may enter, he must enter, and when he cannot enter he must make a claim; and the reason is, for that a freehold and inheritance shall not cease without entry or claim; and also the feoffor or grantor may waive the condition at his pleasure." *Co. Litt.* 218. *a.* Lessor cannot enter for a forfeiture against his own acceptance of rent. 3 *Salk.* 3. Where the forfeiture is once waived, the court will not assist it. *Cowp.* 805.

In estates of freehold on condition, a subsequent acceptance of the sum due, the non-payment of which had caused a forfeiture, is adjudged in law a waiver, in all instances where the party accepting had knowledge at the time of his acceptance, that a forfeiture was incurred. Distinctions in case of chattel interests, of the receipt of rent due and recoverable by action of debt, and perhaps some others, may be found in the books, but none that can affect the present question. See *Litt. sect.* 341. *Co. Litt.* 211. *b.* *Cowp.* 243. 803. 2 *Term Rep.* 425. 2 *Stra.* 900. 2 *Salk.* 597.

It is finally urged, that the charge in the present case is incorrect, for that the plaintiff may maintain his action of disseisin upon the breach of condition and forfeiture, without previous entry, and that the service of his writ is a sufficient claim to support it. If the principles above stated be just, this point was not before the court, its decision could

not be material in the case, nor a mistake a sufficient ground for a new trial. The plaintiff having waived the forfeiture, by twice subsequently accepting the annual rents, had lost all right to enter on the lands, or make claim by any act or in any manner whatsoever. Whether, in case he had claimed the forfeiture and refused to accept the payments, he could have maintained this action without previous entry, is the question now started ; and I am of opinion, that by the rules of law it must be answered in the negative.

Our action of disseisin is often called action of ejectment, but with a considerable degree of inaccuracy. It is a very beneficial process, and supplies the place of every form of action, real, possessory and mixed, for recovering the seisin or possession of lands, if we except the writ of right, which does not lie in this state ; and though it comprehends the original writ of ejectment, which was given to a lessor for years to recover possession of his land when dispossessed ; [See 3 *Black. Comm.* 201.] yet it has no single quality resembling the modern *English* action of ejectment for trying the title, and is wholly unincumbered with its fictions, notices, and rules for confessing lease, entry and ouster, which never existed in fact, and which we should never admit in practice.

In the present case, the defendant was well seised and possessed of the lands under the deed, and had the complete title in fee vested in him, subject only to be devested in consequence of non-payment of the annuity. All agree, that it is in the power of the plaintiff to waive the forfeiture. In such case, no new conveyance to the defendant is necessary ; for his title still continues vested by the deed. The fee cannot lie in abeyance, waiting for the plaintiff to make his election, whether to claim or waive the forfeiture. If he enter on the land and claim it as forfeited, the defendant is thereby devested, and the plaintiff vested anew by his entry, and not before.

In all cases where the right or title of the plaintiff accrues upon his entry or re-entry on lands, an actual entry is necessary in order revest the estate. A confession of lease, entry and ouster in an action of ejectment, is not a confession of any entry sufficient to make out the plaintiff's title, but he must prove actual entry, possession and ouster. *Bac. Abr.*

*tit.* Ejectment, D. 1 *Saund.* 310. 1 *Ventr.* 248. 1 *Mod. Rep.* 10. *Cro. Jac.* 511. 2 *Stra.* 1087., &c.

It is true, that by the statute, 4 *Geo.* 2. *chap.* 28. in cases for non-payment of rent, the landlord may, without any formal re-entry, serve a declaration in ejectment, and it is enacted that such service shall stand instead of a demand and re-entry : and I think, in order to render the service of a declaration, in our action of disseisin, a substitute for an actual entry in cases like the present, a positive statute of this state must be equally necessary ; for the common law knows of no such equivalent.

For these reasons, I am of opinion, that the charge was correct, and no new trial ought to be granted.

In this opinion the other Judges severally concurred.— EDMOND, J. having at first expressed some doubts, afterwards declared himself entirely satisfied with the decision.

New trial not to be granted.