# COMMISSION COURT OF TEXAS, 1879.

### Thomas Henderson v. Alex. Beaton et als.

#### (Case No. 833.)

1. DEEDS.— An instrument of writing in form as follows:

   "REPUBLIC OF TEXAS, *County of Sabine.*

   "This indenture, made and entered into this the 20th day of November, 1839, by and between Mastin Latham and his wife Sarah, of the republic aforesaid, of the first part, and William F. Henderson, of the county of Nacogdoches, and republic aforesaid, of the second part, witnesseth: that the said party of the first part, for and in consideration of the clearing out (*i. e.*), locating; surveying and paying the government dues on one league of land, the headright of said Mastin Latham, by these presents have granted, bargained, sold, aliened, enfeoffed, transferred, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, transfer, convey and confirm unto the said party of the second part, his heirs and assigns, that certain tract or parcel of land" (describing it, and after clause of general warranty concluding), "and hereby waiving all laws or matters of form that might impair this deed of conveyance, provided that said league of land shall be divided equally, according to quality and quantity, by said Henderson or his agent, as soon as possible, and said Latham to take choice of, halves," is an absolute, unconditional conveyance, and not an executory contract.

2. LAND — FORFEITURE FOR BREACH OF CONDITIONS IN A DEED.— See this case for a full discussion of the law governing estates in land upon condition, and their forfeiture for breach of conditions precedent or subsequent, contained in the deed creating the estate.

3. STALE DEMAND — TRESPASS TO TRY TITLE.— The antiquity of a previous perfected and vested right does not involve the doctrine of equitable bar, and where one sues in trespass to try title and for possession and partition of land claimed under an executed deed, and not an executory contract, the defense of stale demand is not applicable.

4. LIMITATION.— In the absence of evidence showing payment of taxes, the defense of limitation of five years cannot be considered.

5. COLOR OF TITLE.— Mere naked possession of land for three years, united to a subsequently acquired chain of title, will not constitute title or color of title within the meaning of the statute of limitations. 26 Tex., 731; 27 Tex., 249.

6. TEN YEARS' LIMITATION.— Where the defendant relies on ten years' possession he must show privity between .himself and those whose possession he claims, as part of his title, under the statute. 46 Tex., 222.

APPEAL from Navarro. Tried below before the Hon. F. P. Wood.

The facts sufficiently appear in the opinion.

*William Croft*, for appellant.

*C. M. Winkler*, for appellees.

WALKER, P. J.— This is an action of trespass to try title and for partition of an undivided one-half interest in a league of land lying in Navarro county, wherein this suit was instituted, by the appellant Thomas Henderson against Alexander Beaton, one of the appellees. The original petition was filed September 26, 1870. By an amended petition, filed December 6, 1870, G. A. Sessions, guardian of Catherine Carter, a minor, W. S. A. Kirksey, administrator of the estate of Isaac Kirksey, D. R. Rakestraw and her husband, G. A. Rakestraw, James I. Kirksey, E. Rather and her husband, David Rather, alleged to be heirs of the estate of Isaac Kirksey, deceased, who, as plaintiff alleges, claim to have title to said land, were prayed to be made parties co-defendant with said Alexander Beaton.

The original answer of the defendant Beaton consisted of a general demurrer, and general denial of the allegations of plaintiff's petition, with the plea of "not guilty."

No service, nor, indeed, issuance of process for service on the other co-defendants with said Beaton; yet of them G. A. Rakestraw and D. R. Rakestraw, G. A. Sessions, guardian of Catherine Carter, and W. S. A. Kirksey, administrator of Isaac Kirksey, deceased, appear and answer on July 14, 1871, by general demurrer, general denial, and plea of

"not guilty," and adopting the answers "heretofore" filed by the defendant Beaton.

Thereafter, to wit, November 20, 1871, defendant Alex. Beaton filed for himself alone an amended answer, setting up, in bar of plaintiff's action, the statutes of limitation, respectively, of ten, five and three years, and also that "the alleged *contract* sued on is a stale demand, more than thirty years having elapsed since the date of said contract, and during all this great length of time, said plaintiff, and those under whom he claims, have taken no steps whatever to assert his rights, if any he ever had." Also, that the plaintiff, long prior to the institution of this suit, had wholly abandoned said contract; and further, "that William F. Henderson, one of the parties to the alleged contract between said Henderson and Latham, under whom the plaintiff claims title, on the —— day of December, 1853, being requested to comply with said contract by said Latham, wholly repudiated said contract, and refused to comply therewith, and then and there forfeited and abandoned the same;" and lastly, a denial specially that the said plaintiff or Wm. F. Henderson, or any other person under whom the plaintiff claims, ever 'cleared out,' located, surveyed or paid the government dues upon the headright league of Mastin Latham."

The plaintiff's petition is in the usual form for actions of this character, alleging ownership simply, without setting forth the evidence thereof, or otherwise alleging or describing his muniments of title. The petition describes the land whereof he claims to own "an undivided half interest" as a tract or parcel of land lying in Navarro county, "known as the M. Latham league, and bounded as follows," and, proceeding to set out the field notes thereof, afterwards alleged that the defendant, Alexander Beaton, on the 1st day of October, 1869, entered into possession thereof and committed divers trespasses, etc.; that he believes the defendant to be the owner of the other undivided half of said league. Plaintiff further alleged that he had divided the land into two equal parts, having reference to quality, quan-

tity, prairie, timber and all other advantages and disadvantages, and, for the sake of an amicable division of said land, tendered to said Beaton choice of halves, only reserving to himself the right to the half other than that which might be chosen by him, and that said Beaton refused to take choice, and denies petitioner's right thereto, claiming title to the whole in himself. Petition concludes with prayer for judgment for his land and for partition.

The demurrers do not appear to have been acted upon by the court, nor presented for action, and may be deemed to have been waived.

A jury was waived, and the cause submitted to the court on the law and the facts. Judgment for the defendants, from which the plaintiff appealed to the supreme court.

The appellant assigns as error that the court below erred " in rendering judgment against him as rendered."

The plaintiff supported the allegations of his petition by evidence showing a perfect chain of title from the government down to himself, and which was sufficient to establish ownership and the corresponding right to possession, and partition of the land sued for, unless the instrument of writing executed by the original grantee, Mastin Latham, to William F. Henderson, through whom the plaintiff derives title, if any, is insufficient to convey the interest claimed by the plaintiff. It is insisted by the appellant that the instrument referred to is a deed, valid in every essential particular to vest in William F. Henderson the fee-simple title to an undivided half of the league of land described in the petition. On the other hand, it is maintained by the appellee, Beaton, that said instrument was nothing more than an executory contract between the parties to it, whereby Latham should thereafter, on the fulfillment by said William F. Henderson of the conditions and stipulations contained in said contract, make to the latter the contemplated conveyance of the land.

If the appellees successfully maintain their construction of the instrument referred to, the defense set up, of a stale demand and abandonment, becomes pertinent and material,

and would doubtless warrant the judgment which has been rendered in the district court.

If, however, the instrument is such a deed as vests in William F. Henderson the absolute fee-simple estate of Mastin Latham, the original grantee of the league of land involved in this controversy, the plaintiff's chain of title becomes complete and perfect, and is not otherwise assailed or controverted by the defendants, except in so far as relates to the defenses set up under the statute of limitations.

The plaintiff introduced in evidence a translated land office certified copy of the grant from the government of Texas to Mastin Latham, as a colonist of the league of land therein described, corresponding, in the field notes given, with those set forth in the plaintiff's petition, which said grant was issued on the 5th day of October, 1835; also the *instrument of writing* (contract or deed, as the case may be) from Mastin Latham to William F. Henderson, for an undivided half of said land, wherein it is described as "a league of land granted to said Latham as a colonization right," . . . "lying and being on the southwestern branch of Trinity river, as follows," and then sets out the field notes as the same are recited in the original grant. The characteristics of this instrument, which present here questions for construction, and relate to its legal effect, will be hereafter noticed. The remaining link in the plaintiff's chain of title consists in the evidence adduced by him of a judgment of the district court of Navarro county, against William F. Henderson, in favor of Nat. M. Bufford, rendered on the 1st day of November, 1860, for $446.72. Issuance of execution on the same, 17th day of April, 1868, by virtue of which the interest of said William F. Henderson in said land was levied upon, and sold by the sheriff of the county, at which sale the plaintiff became the purchaser, and to whom the sheriff made a deed in pursuance thereof. The instrument of writing from Latham to William F. Henderson, relied on as a conveyance, was recorded in the office of the county clerk of Robertson county, on the 28th day of June, 1840; Navarro county, subsequently created, and including

within its territory the land in controversy, lying in that which was formerly Robertson county. The instrument itself need not be here set out in full, in order to apprehend the grounds of controversy between the parties, respecting the time, character and legal effect of the same; it commences thus:

" REPUBLIC OF TEXAS, *County of Sabine.*

" This indenture, made and entered into this the 20th day of November, in the year of our Lord 1839, by and between Mastin Latham and his wife Sarah, of the republic aforesaid, of the first part, and William F. Henderson, of the county of Nacogdoches and republic aforesaid, of the second part, witnesseth: that the said party of the first part, for and in consideration of the clearing out (*i. e.*), locating, surveying and paying the government dues on one league of land, the headright of said Mastin Latham, by these presents have granted, bargained, sold, aliened, enfeoffed, transferred, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, transfer, convey and confirm unto the said party of the second part, his heirs and assigns, that certain tract or parcel of land," etc., proceeding to describe the land as hereinbefore has been stated, which description being succeeded with all the other usual and apt terms of conveyances by deed employed in the several respective parts of a complete and formal warranty deed; concluding the clause of general warranty thus: " and hereby waiving all laws or matters of form that might impair this '*deed of conveyance.*' "

Succeeding the last recited paragraph, and concluding the entire instrument, occur the following words, viz.: " Provided, that said league of land shall be divided equally, according to quality and quantity, by said Henderson or his agent, as soon as possible, and said Latham to take choice of halves." Signed by Mastin Latham alone, and witnessed by two subscribing witnesses.

The portions of the instrument upon which the counsel for the appellees predicates his argument that it is an executory contract, with conditions precedent to be performed by

Wm. F. Henderson, rather than an absolute deed, are these: "For and in consideration of the clearing out (*i. e.*), locating, surveying and paying the government dues on one league of land, the headright of said Mastin Latham, by these presents grant," etc.; and again, "provided that said league of land shall be divided equally, according to quality and quantity, by said Henderson or his agent, as soon as possible, and said Latham to take choice of halves."

The forms of expression employed to give effect to whatsoever may have been the intentions or agreement of the parties, certainly was not in the ordinary and usual, nor the most natural and favorable mode, to indicate and express mutual and reciprocal acts to be done by each, and thus to define the terms of an executory contract whereby on the doing of certain things by Henderson, and then only, that Latham should convey to him the land. If the services of Henderson had been required to "clear out (*i. e.*), locate, survey and pay government dues" on land yet in the future to be cleared out (*i. e.*), located, surveyed, and the government dues accruing to be thereafter paid, and the parties had intended to reduce to writing and form the intelligible evidence of such contract, whether the form of the writing partook of the shape of a bond for title, expressing the reciprocal conditions to be imposed upon each of the contracting parties, or whether it should partake in form of the nature of a deed, or indeed in whatsoever shape it might be manifested, it would be expected that the substantial and material fact would be indicated that the services thus required of the supposed grantee or covenantee who should thus "clear out, locate," etc., were to be performed in the future, by the use either of such direct expressions as would indicate that fact, or else that it would appear from the general nature of the contract and objects contemplated as indicated by the instrument. But the instrument made and adopted by them to evidence their agreement is, at least, and very certainly, wanting in the appearance of any such effort thus to express and define a contract of that nature, with any approach to that degree of certainty or

fullness which might have been looked for, if such had been their object. So far from it, indeed, that the instrument is, in form, an absolute warranty deed, and not otherwise qualified in respect to its immediate effect as such, than as may result from the interpretation to be given to the above recitals of the consideration (and the provision respecting partition), which assuredly do not in express terms, nor by any fair and satisfactory implication derived alone from the language itself, indicate that the services referred to as the consideration of the deed were to be performed in the future.

If the language employed be alone referred to from which to deduce the conclusion that the consideration contemplated services yet to be rendered, there is nothing in the isolated sentence itself to warrant any other supposition than that the grant was then being made "in consideration" of the past, accepted and acknowledged services therein recited. Such is the fair and natural interpretation of the language itself; and the want of any counter or qualifying meaning other and different from that which attaches to the apparent meaning, considered with respect to the place it occupies in the sentence with reference to the subsequent words of absolute conveyance and warranty of title, renders still more conclusive and satisfactory the proposition that, from the *mere words* themselves, there is no warrant for the inference that the true meaning of the parties can only be reached by supplementing the sentence with ideal words to signify that Henderson should *thereafter* "clear out, locate," etc., as the condition upon which the conveyance depended.

Words used in a deed of conveyance are taken most strongly against the grantor. Potter's Dwarris on Statutes, 174.

In addition, however, to these reasons for the interpretation which we place upon this clause of the instrument, we will refer to evidences both intrinsic and extrinsic of the instrument which corroborate and confirm the justness of the construction arising and derived from the mere words themselves. First, as to the evidences intrinsic and derived from the instrument itself: The conveyance to Henderson was

made on the 20th day of November, 1839, and it sets out the field notes of the headright league, and recognizes thereby the completion of the matter, at least of the " locating and surveying" of the land, which the grantor describes as the same which had been granted to him as a colonization right; therefore, as to the rendition *thereafter* of services in respect to *locating* and *surveying* the land, it would have been but the requirement of a needless, if not impossible, act, to have made provision therefor. Further corroboration exists in the descriptive words at the conclusion of the clause of warranty before quoted, designating the instrument as " *a deed of conveyance.*"

The extrinsic circumstances of corroboration in support of the construction given of the terms used consist in the fact that the original title was complete and perfected in October, 1835, four years precedent to the date of the instrument of writing, or deed, as it may be properly termed, from Latham to William F. Henderson. There is no pretense made, nor can any under the evidence be made, that the transaction between Latham and Henderson had reference to any other location, surveying or paying of government dues than that which referred to the grant, location, surveying and perfection of the title to Latham's headright as a colonist, and the identical, same title as that whereof the plaintiff introduced the land office copy as evidence. Such being the case, it would be an incongruous perversion of all the facts and their relations to each other to suppose that Latham, in making the conveyance to Henderson, as the consideration therefor, stipulated in November, 1839, for the " clearing out (*i. e.*), locating, surveying," etc., of the land, thus long before perfected into a complete title.

And, lastly, there is in the evidence the positive, direct testimony of William F. Henderson himself, who stands unimpeached as a credible witness, who stated that " the consideration therein expressed was correctly set out; that the services therein set out were rendered partly by himself, and others were paid by witness for performing the services not rendered by himself." That witness stated that he did not

locate the land, but bought the contract from the party who had located it, and surveyed or had it surveyed; that he had himself paid the surveyor's fees and government dues, and obtained the grant therefor. He also stated that Latham, in 1857 or 1858, had offered him $1,000 for his interest in the land, which offer was refused.

If the language of the clause is such as to present no ambiguity requiring or allowing of parol evidence to explain it, it must be construed without the admission of parol testimony, under the familiar rule of evidence to that effect; and on the hypothesis that there is no such ambiguity, the proper construction of the instrument, as we determine, will disallow the interpretation that the clause referred to contemplates or refers to future services to be performed.

On the other hand, if there exists such ambiguity in the . clause which warrants the admission of parol evidence in aid of a proper interpretation, then such parol evidence, together with the attending circumstantial evidence bearing upon the subject, places it beyond question that the consideration meant and referred to was a past and executed, not a future one, intended to embrace future services, the non-performance of which should defeat the conveyance.

To reverse, however, the construction we have placed upon the "consideration" clause, and allowing, for the argument, that the "clearing out (i. e.), locating, surveying and paying," etc., contemplated and meant that said Henderson should do and perform those acts *thereafter*, what then is the legal effect and proper interpretation to be placed upon the instrument? Such a consideration, clearly, would support the conveyance — it would be a valuable consideration — a good consideration even would be adequate. A want or failure of consideration is no ground of avoidance of a deed. 3 Wash. Real P., p. 320, sec. 8, and authorities cited. Thus where, in consideration of a promise to marry him, the grantor gave a deed of land, but died before the marriage took place, it did not affect the validity of the deed. Smith v. Allen, 5 Allen, 458.

There is nothing in the deed to indicate that such a con-

sideration was intended to operate as a forfeiture or post-ponement of the vesting of the title, and the clear language of the deed imported just the contrary effect. There is no view of which the subject is susceptible, which can success-fully maintain the proposition contended for by the appellee on this branch of the case before us. The deed, therefore, is a valid deed and not an executory contract; yet it remains still to construe the deed farther, and to determine whether, notwithstanding its validity as a deed, it conveys an absolute estate, or whether the estate be one upon condition; which leads to the consideration of the concluding clause of the deed as follows: "Provided that said league of land shall be divided equally, according to quality and quantity, by said Henderson or his agent, as soon as possible, and said Latham to take choice of halves."

Counsel, both for appellant and for the appellees, present in their briefs the question arising under this clause of the deed, whether or not its effect is or is not to render the contract or deed *executory*. We apprehend that there can be no question of that kind involved; the deed speaks in the present tense, and conveys an estate absolutely, unless that estate is by the clause above quoted defeated by the happening or not happening of some contingent event; which is just what constitutes an estate upon condition (2 Wash. Real Prop., p. 2), and has no logical relation to the subject of *executory* contracts. It is quite questionable whether the clause quoted amounts to anything more than a specific provision for a speedy partition on terms requiring Henderson to perform the work, and designating the mode of effecting the selection of the respective parts. If such be the case, the estate created would not be defeasible by the non-performance by Henderson. "If the supposed condition of an executed grant amounts to an agreement on the part of the grantee to do certain things, it will not be held to defeat the estate if he fails to perform. In order that the condition, in such a case, should defeat the estate, the grant must be in its nature executory." 2 Wash. Real Prop., p. 3, sec. 3. But, supposing the clause to qualify the conveyance so

as to make it a condition, the condition is evidently not prece-
dent, but subsequent. To determine whether it be the one or
the other, "the construction must depend upon the intention
of the parties, as gathered from the instrument and the exist-
ing facts, since no technical words are necessary to deter-
mine the question." 2 Wash. Real Prop., p. 5, sec. 4. The
rule for testing the quality of a condition subsequent in
Underhill v. Saratoga R. R., 20 Barb., 455, is, "if the act or
condition required do not necessarily preclude the vesting of
the estate, but may accompany or follow it, and if the act
may as well be done after as before the vesting of the es-
tate; or if, from the nature of the act to be performed, and
the time required for its performance, it is evidently the
intention of the parties that the estate shall vest, and the
grantee perform the act after taking possession, then the
condition is subsequent." See, also, Barruso v. Madan, 2
Johns., 145; Finlay v. King's Lessees, 3 Pet., 346; Rogan v.
Walker, 1 Wis., 527.

If the clause created a conditional estate, under the prin-
ciples and rule above given for a proper discrimination be-
tween conditions precedent and subsequent, it would seem
clear enough that in this case the condition was subsequent.
If that be true, the rule of law applicable to such a condi-
tion, when relied on to work a forfeiture, demands a strict
construction. 2 Wash. Real Prop., p. 6, sec. 5. "Upon these
principles, where a condition applies in terms to the grantee
or lessee without mention of heirs, executors or assigns, the
condition cannot be broken after the death of the grantee
or lessee. If heirs and executors are named, but not as-
signs, it will not be broken by an act of an assignee. Ac-
cordingly, where the grant of an estate was upon condition
that the grantee should maintain a fence, without naming
his heirs, executors or assigns, it was held that the neglect
of his heirs, after his death, to do it did not work a for
feiture." 2 Wash. Real Prop., p. 6, sec. 5.

Unless, therefore, by reason of breach of condition and
the forfeiture of the estate whilst it was owned by Wm. F.
Henderson, no subsequent breach of the condition by the

plaintiff can affect his title or work a forfeiture; the convey-
ance becomes discharged of the condition by the act of sale
and deed of the sheriff. "And, besides, not only is the estate
thus preserved against forfeiture, in the hands of the subse-
quent owner, as against the grantor even, but the right of
the grantor to defeat the estate held upon condition is one
which cannot be aliened or assigned; nor can the benefit of
a condition in a grant be reserved to any one but the grantor
and his heirs; a stranger cannot take advantage of it."
2 Wash. Real Prop., pp. 11, 12, sec. 14.   Breach of *condi-
tions in deed* (otherwise of *conditions* in law) allow only him
who creates the estate to take advantage of the condition
by entering and defeating the estate.

Breach of the condition by no means operates *ipso facto*
as a forfeiture of the estate; but quite the reverse. "Noth-
ing short of an actual entry will serve to defeat an estate
upon a condition which has been broken." 2 Wash. Real
Prop., p. 13, sec. 16; and Fonda *v.* Sage, 46 Barb., 123. "It
cannot be done by action." Shep. Touch. (fol. ed.), 496;
Co. Litt., 218 (a); Chalker *v.* Chalker, 1 Conn., 79, and
numerous others which may be added.

The forfeiture of the estate, then, must, if at all, be en-
forced, when a breach of condition warrants it, by the *elec-
tion* of the person who has the right to enforce it to do so.
That person must be the grantor himself. And it must be
made to operate upon the title of the grantee whilst in his
hands, and not subsequently in the hands of an assignee;
and the mode of doing so must, at common law, be by entry
upon the land. The *mode* may, perhaps, be qualified and
different under our laws.

Under the facts of this case, if the clause in the deed which
is under consideration had amounted to a condition subse-
quent, and might have had the legal effect, on the breach
thereof, to divest the title, yet, nevertheless, no forfeiture
has been enforced, nor proceedings attempted by the proper
party against any proper party thus to create or effect such
a result; and now, for the first time, an assignee under
Latham's title pleads, in effect, the forfeiture of the estate

against the plaintiff, who in turn holds under the sheriff's deed, divesting Wm. F. Henderson of all right and title,— and it is not clear that Latham, before he conveyed to Ferguson and Beaton, had ever made his election to treat the failure to partition as a breach of condition,— and certainly made no entry upon the land, nor did any equivalent act (as by suit at law), if any other act under our laws would have served the purpose, nor take any legal step looking to the forfeiture of the estate held upon condition by Wm. F. Henderson. Under the most favorable view that may be taken for the appellees of the legal effect of the clause under consideration, and applying the evidence with the most favor that may be claimed for it, it is impossible to render the defense available. "Because such right is not assignable, it is universally true that a stranger cannot take advantage of a condition. Such right is not a reversion, nor a possibility of a reversion, *nor is it an estate in land;* it is a mere chose in action, and, when enforced, the grantor is in by the forfeiture of the condition, and not by reverter." 2 Wash. Real Prop., p. 12, sec. 14, and authorities cited.

We do not, however, regard the clause in question as having been inserted in the deed as a condition either precedent or subsequent; but as a provision made by the parties, having for its purpose the speedy partition of their respective interests on stipulated terms agreed to and understood beforehand. We have, nevertheless, discussed the subject upon an opposite hypothesis, conceiving, as we do, that under the most favorable view that may be taken of the law and facts applicable to the clause under review, the result must be the same, and the deed to Wm. F. Henderson held to be an absolute, unconditional conveyance to him of an equal undivided interest in the land. We have discussed the subject upon common law tests and principles, not unobservant, nevertheless, that the deed referred to was executed a short time before the common law was adopted by the republic of Texas, and took effect the 16th day of March, 1840.

Under the view we take of the legal effect and construction to be given to the deed from Latham to Wm. F. Hen-

derson, it is apparent that the defense of "staleness of the demand" is inapplicable to the nature of whatever right of action exists under the deed from Latham; the deed being *executed*, and not an *executory* contract, and the remedy sought being for possession and partition by action of trespass to try title, the antiquity of the heretofore perfected and vested right will not involve the doctrine nor application of the equitable bar appropriate to a different kind of claim or right.   Mere laches or delay of the owner in bringing suit to recover land to which he has legal title will not defeat his action, where there has not been actual adverse possession for a sufficient length of time to support a plea of the statute of limitations.   Williams *v.* Conger, 49 Tex., 582. Under the evidence developed on the trial, the case presented is a pure question of title, depending upon the completeness and perfection of the chain relied on by plaintiff to support his assertion of ownership, and not one of undeveloped, unascertained, or latent claim or demand.

The remaining defense is that of the statute of limitations of three, five and ten years respectively.  · At the institution of this suit the bar of ten years had not become completed under the most favorable view to be taken of the evidence relating to the duration, continuity and adverse character of the occupancy.   From the beginning of the year 1854, the year in which Stone, the first occupant, settled on the land, to the 2d day of March, 1861, was seven years and two months.   By the constitutions of 1866 and 1870, the period of time subsequent to the last-named date up to the 31st day of March, 1870, is not to be computed.   This suit was filed September 26, 1870, thus giving a period of occupancy less than ten years.   Of this construction of the constitutions, in Wood *v.* Welder, 42 Tex., 396, it is said by the court that the adjudications of the question are too well settled, and have been too long acted on, to be now disturbed.   See, also, McMullen *v.* Hodges, 5 Tex., 73; Smith's Comm. on Stat. & Cons., 166–168; Sedgwick on Cons. Law, 411, 412, 682, 683, 692–3; Bender *v.* Crawford, 33 Tex., 756–7.

The entire absence of any evidence tending to show that the defendant paid taxes on the land renders the consideration of the defense, so far as relates to the plea of the statute of five years' limitations, unnecessary.

To constitute an adverse possession of three years a bar, it must be "under title or color of title." "By the term title, as used in this section, is meant a regular chain of transfer from or under the sovereignty of the soil." Pasch. Dig., art. 4622. The evidence expressly and in terms shows that the tenants who occupied the land were placed upon it and held it as the tenants of Latham. The witness Meazell says that Stone, the first occupant, and who went upon it in 1854, "remained upon it about one year under Beaton as the agent of the Latham heirs." Again, that "the land has been held by Beaton as the agent or attorney of the Latham party;" and speaking of Donaho's tenancy, "he claimed under Major Beaton likewise." The written lease between Beaton and Donaho expresses that he leases and holds the same "as the tenant of Mastin Latham." The contract of lease is signed by "Mastin Latham, by Alex. Beaton, agent and attorney." Witness Meazell states that Stone, Donaho and himself held the land as "tenants of said Mastin Latham, under Beaton." The testimony of Patterson is to the same effect.

The defendant read in evidence a deed from said Latham to James Ferguson to the entire league of land, dated September 20, 1849, recorded in the year 1851; also a deed from Ferguson to Geo. T. Wood, dated 17th October, 1856, recorded February 9, 1857, and deed from the heirs of Wood to Beaton, dated October 15, 1869, recorded December 6, 1869. Also a deed from Mastin Latham to Beaton of same land, date April 11, 1868, recorded May 26, 1868.

This chain of title is utterly repugnant to the possession claimed under it — and *vice versa*, the possession and occupancy are opposed to the title. The possession was not *under*, but *against*, that title. The tenants were those of Mastin Latham. The chain of title offered by defendant to support the occupancy being one from Latham to Ferguson,

and to the assignees of the latter, Latham, if he occupied the land thus conveyed, by himself or by tenants, did so without the support of a title which he had once owned but had since conveyed, and whatever rights could be derived by him under such occupancy would necessarily arise from a possession without title or color of title; and we are of opinion that no such possession can be made available under the three years' statute of limitations. The defendant Beaton in his testimony says that the deed to himself from Latham was made at his instance, to enable him to make and carry out a compromise and settlement then contemplated with the Wood heirs in a lawsuit then pending between them and Mastin Latham; and the defendant, in his brief before us, disavows said deed as having ever been relied on, and declares that it is not now relied on as a part of his title "as against the appellant." And besides, a purchase by a party knowing that his grantor had previously sold the land to another destroys thereby the conveyance as a muniment of title, under the fifteenth section of the act of limitation. Eliot v. Whitaker, 31 Tex., 412. Then the deed to him from Wood's heirs, made to him within less than one year previous to the institution of this suit, constitutes the paper title through which he must claim; and the naked adverse possession of Latham, whose possession was against and not under the title of the Wood heirs, cannot avail the defendant.

Wright v. Dailey, 26 Tex., 731; Harris v. Hardeman, 27 Tex., 249, support the view upon which we rest our opinion respecting the defense of the three years' statute of limitations; and it may be added that the same reasons that exist against the validity of that defense are alike applicable to the defense of ten years' limitation; the possession being that of Latham, under whose deed to him the defendant Beaton disavows claiming, therefore, even though the ten years' bar had become complete before the institution of this suit, whilst it would prevail for Latham against the title through which Beaton claimed (that through the heirs of Wood to him), it could not avail the defendant Beaton. Where a defendant relies on the possession of ten years required by

article 17 of the statute of limitations, he is required to show privity between himself and those whose possession he claims, as part of his title, under the statute. Trueheart *v.* McMichael, 46 Tex., 222.

The deed purporting to be a conveyance of the land from the heirs of George T. Wood is made by W. W. Whitehead for himself and as agent and attorney in fact for the three other grantors, viz., his wife, Elizabeth A. Whitehead, D. S. Gindrat and H. A. Gindrat, the names of all of whom are signed to the deed by said W. W. Whitehead, "for himself and the above parties." There is no proof whatever of any authority or agency, and it appears on the face of the deed that Elizabeth A. Whitehead is a married woman, the wife, as stated, of said W. W. Whitehead. She being one of the heirs, her husband could not have been. It would seem that such an instrument, under the evidence in the record, thus wanting in proof of the agency, or of the privy examination and acknowledgment of the married woman, in connection with the fact that her husband was the person thus assuming to act for her, conveyed no title to the defendant Beaton, nor such color of title as would maintain the defense of three years' adverse possession, even should there exist no other impediment.

When Beaton acquired his deed of conveyance from Latham, if he had even claimed under it, his chain of title, on its face, was such an one as would support a subsequent possession and defense under the three years' statute of limitations from the date of its acquisition, but the title thus acquired would not retroact upon the naked, unsupported possession of Latham, and constructively convert the possession thus held by Latham into a possession under title, or color of title, to the benefit of a grantee, thus uniting a mere naked possession with a chain of title subsequently acquired.

The conjunction, therefore, of the title of the tenants in possession, not itself a bar, with the title or color of title held by Wood's heirs, or under the chain of title derived under Latham's deed, gives no additional strength to the nsufficiency or defectiveness of the separate elements requisite to co-exist in order to bar plaintiff's superior title.

In every light in which we have been able to view the questions that relate to the statute of limitations, pleaded in this action, the defense must fail.

We conclude, therefore, that there is no sufficient basis for the judgment that has been rendered, and that it should be reversed. The appellant's counsel asks further that the supreme court shall also render such judgment for the plaintiff against the appellees as should have been rendered by the district court. In view of the necessity of ascertaining with greater certainty the relative rights of all the respective owners who may be entitled to partition than can with a due regard to judicial accuracy be determined from the results of the trial which has been had, and perhaps other additional reasons may be found, we do not deem it proper thus to dispose of the case before us, but are of opinion that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 8, 1879.]