CASE No. 1006.

## HAMMOND v. PORT ROYAL AND AUGUSTA RAILWAY COMPANY.

1. Every cause of action in a complaint should be completely stated, and contain, within itself, all necessary averments, or it will be held bad on demurrer.
2. Where the facts are sufficiently presented as a cause of action, without regard to statements made in other counts, a demurrer will not be sustained, although the allegations are not as formal and distinct as they should be.
3. A demurrer to one of the causes of action set forth in the complaint being overruled, and defendant having at once given notice of appeal therefrom, and declined to answer, further proceedings under that cause of action should have been suspended until the appeal was disposed of.
4. A railroad having been sold by order of court to pay the debts of the cor-

poration, the purchasers, the defendant corporation, are not responsible for injuries done by the railroad to adjoining lands before the sale, and, therefore, in action against the new company for damages done by the railroad to such lands caused by a failure to maintain proper drainage, the Circuit judge erred in charging the jury that "you will take into consideration all you have heard as to the value of the land then and now," in estimating the damages.

5. But whether the damages should be measured by the rent of the land, the value of crops or the deterioration in value of the land, one or all, was a matter for the the jury to determine from the evidence.

6. The intention of the parties to a deed, as to whether an estate upon condition has been created, must be determined by the court from the words of the deed itself, and should not be submitted to a jury.

7. A deed conveyed a strip of land to a railroad company, to them, their successors and assigns forever, "provided always, and this deed is upon the express condition" that a certain system of drainage was to be kept up by the rail road company. *Held*, that this created a condition subsequent in deed, and voidable by the grantor upon condition broken.

8. But no action for the recovery of the land could be brought by the grantor until he had made entry upon the land after condition broken, or made claim, if entry was impossible.

9. Whether the grantor had waived his right to enforce a forfeiture, is a question of intention depending upon the facts, and was properly submitted to the jury.

10. Public policy does not forbid a railroad corporation from accepting land for its road-bed upon such conditions—conditions reasonable and possible to be performed.

Before ALDRICH, J., Aiken, April, 1880.

This was an action instituted June 26th, 1879, by Paul F. Hammond against the Port Royal and Augusta Railway Company, upon two causes of action, which are sufficiently stated in the opinion of this court.

On May 22d, 1872, Hammond executed and delivered to the Port Royal Railroad Company a deed of bargain and sale, whereby he conveyed to the railroad company a strip of land through his Cathwood plantation, in South Carolina, upon the conditions set forth in the opinion of this court. Hammond had, before that time, at great expense, reclaimed this land and the lands adjoining, so that they had become very highly productive and valuable. Hammond, believing that the corporation had failed to

perform these conditions, filed a bill for specific performance in the Superior Court of Richmond county, in the State of Georgia, through which county this railroad passed. The jury to whom the cause was submitted, May 4th, 1875, found a verdict for $3000 damages, and that the railroad company be required to comply with their agreement, as set forth in the deed, within ninety days, under a penalty of $5000. This verdict was set aside by the Supreme Court of Georgia, on appeal, upon the ground that the court had no jurisdiction to compel a Georgia corporation to go into an adjoining state to perform a contract. 58 *Ga.* 583.

December 15th, 1874, a bill was filed in the United States Circuit Court for the District of South Carolina, by mortgage creditors of the Port Royal Railroad Company for a foreclosure of their mortgage. On March 28th, 1878, Hammond filed his petition in this cause, setting forth the deed, the failure of the corporation to comply with its conditions, and his damages, and praying to be made a party defendant, and that he be heard upon all questions relating to the sale and the application of the proceeds, and for his damages and a removal of the obstructions. On May 9th, 1878, this petition was referred to James Simons, Esq., as special master, for investigation and report. On April 25th, 1879, Mr. Simons filed his report, wherein he ascertained the damages at $8940, but that such damages were not an encumbrance superior in law to the mortgage.

Meantime, on June 6th, 1878, the railroad was sold by order of the United States Court and purchased by a new company, who organized under the name of the Port Royal and Augusta Railway Company, and took possession in May, 1879. The sale was confirmed during this same month, " without prejudice to the claim of Paul F. Hammond," who obtained leave the same day to withdraw his petition upon payment of costs.

On June 12th, 1879, Hammond, by his attorney, demanded, by letter, from the defendants, the possession of the land described in the deed—but possession was not surrendered.

Action was then brought as above stated. Defendants answering the first cause of action denied title in the plaintiff, and demurred to the second cause of action. The demurrer was

overruled, and defendants excepted and gave notice of appeal, and asked for a continuance pending the appeal. Leave was granted to put in an answer, which was declined. The case was required to go on. After the evidence for plaintiff closed, defendants moved for a nonsuit, which was refused.

The defendants asked for several instructions to the jury, which are repeated in their grounds of appeal. The charge of the presiding judge was as follows:

The requests to charge have been read, and you will be able to arrive at your conclusions after I have delivered to you my charge. I will note on them for the purposes of this case those that I refuse and those that I charge, so that the whole matter can be discussed in the Supreme Court. As this is a very important case, I desire that every word may be clearly understood.

Next to life and liberty, the law guards with jealous care the freehold of the citizen. The questions of law in this case have been very fully and ably discussed by counsel. They are very interesting and important. These I have decided. If I am wrong I will be corrected by the Supreme Court; if I am right, much time and labor will be saved to the parties to this cause, and much expense to the county. With these questions of law you have nothing to do; you will understand them from what I am about to say; for them the court alone is responsible. The evidence has been given you from the stand.

There are three questions of fact to decide, which is your peculiar province, and I do not propose to influence your minds, as the law has allotted to you that exclusive duty.

The first is, did the plaintiff, Hammond, sign and execute this paper, intending to convey to the Port Royal and Augusta Railroad Company, the defendant, an estate on condition that his system of drainage was to be preserved as it then was, or was it a covenant, which, if violated, gave him an action for damages against the company, to be assessed by the jury.

If you find it was an estate on condition, and that the condition has been broken, then the verdict will be for the land conveyed in the deed—on the breaking of the condition the title reverted—and such damages as you may find the plaintiff has sustained by the non-performance of the condition. Now this

question of condition is one of evidence. Did the plaintiff, Hammond, convey the strip of land to the railroad company on condition? The charter of the company empowered the corporation to enter upon the freehold of the plaintiff, appropriate his land against his consent, at such a valuation as a jury of freeholders might assess. This was giving the corporation the right of eminent domain, which none but the sovereign state can exercise. The surrender of this sovereign right is a concession to those great corporations which add so much to the wealth, convenience and happiness of the people. They convey the mail and passengers with the speed of the wind—annihilate time and space and develop the resources of the country, convey its produce with celerity at reduced rates, enhancing the value of lands through which they pass or which are adjacent, build up towns, villages, and sometimes cities on their lines, increasing the wealth of the state, and adding to the convenience and comfort of the people—a benefit hardly to be appreciated.

For these reasons the state has permitted these corporations to share her right of eminent domain. But, while the state has been thus generous to the projectors of these enteprises which add to her wealth, and to the convenience and comfort of her people, she has not been unmindful of the rights of the proprietors, her own citizens and children. So when she granted this charter empowering the company to enter upon and appropriate the right of way, she also imposed upon them the duty of getting the consent of the proprietor, or, if he refused, to have the damages assessed. In this particular case the company elected to negotiate with the proprietor, and the deed before you is the result. From this deed and the evidence you have heard, the question for you is, what was intended by it? Was it a conveyance of the strip of land on which the railroad is erected, a title to the land on condition that the system of drainage should remain as it then was, or the land revert, or was it not? What did the plaintiff intend when he executed the title, and what did the defendant understand when it received it?

If both parties intended that unless this system of drainage as it then was, should be preserved, the land should revert to the plaintiff, then the plaintiff is entitled to recover, and your verdict

must be for him for the land, and such damages as you think, from the evidence, he has sustained.

The next question is, has the plaintiff waived his right under the deed, supposing you to consider it to be a title on condition? In all these negotiations between the plaintiff to avoid this litigation and settle this dispute on amicable terms, is it a waiver? You will decide these questions by the evidence. If it was a waiver the plaintiff is not entitled to recover. Has the plaintiff, in his interviews and by correspondence with Mr. Wilson, the president, or Mr. Fleming, the superintendent, waived his rights? Has he, by his litigation in the court of Georgia or of the United States, waived his rights? This is a question of fact, of which you are the judges and the only judges.

Having passed on these questions, your next inquiry, if you find for the plaintiff, is, what are his damages? In deciding this you will take into consideration all you have heard as to the value of the land then and now. Has the railroad company injured the plaintiff, Hammond? If so, how much? Now, gentlemen, in deciding this case you must not decide it because the plaintiff is your neighbor, your fellow-citizen, and the defendant is a corporation of New York or Georgia capitalists, but as your consciences will dictate, and as truth and justice demand. If this company has exercised the high power conferred by the state with arrogant assumption of authority and a willful disregard of the rights of the citizen, then your verdict will teach them that the landed proprietors along the route have some rights which you will protect, and you will inquire what is the extent of the damage to the plaintiff, and you will also inquire if the plaintiff has been guilty of neglect in not putting his land in order for cultivation before the work at the water-way of the railroad was done by the company. That is all the ciphering you have to do. If, however, you conclude that the land has been deteriorating in fertility and value, and the plaintiff, Hammond, well knowing of this has brought his suit as a speculation to extort money from the company, then he should not recover a single cent. Take the case.

If you find for the plaintiff generally on all questions, your verdict will be " we find for the plaintiff the land in dispute, and

so many dollars damages." If for the defendant, your verdict will be, " we find for the defendant."

The presiding judge did not, before the jury retired, note on the defendant's requests those that he " refused and those that he allowed," nor has this been done since the trial.

The jury found for the plaintiff the land in dispute, and $6346.31.

Defendants appealed upon the following grounds :

I. *First.* That his Honor erred in overruling the demurrer to the second cause of action.

*Second.* That his Honor erred in ordering for trial the said cause of action against the objection of defendant's counsel after said demurrer had been overruled, and notice of appeal from said ruling given.

II. The defendant will renew his motion for a non-suit, on the following grounds :

*First.* Because the deed of Paul F. Hammond to the Port Royal Railroad Company did not create an estate upon condition.

*Second.* Because if the said deed did create an estate upon condition, the omission to perform the condition did not, *ipso facto,* determine the estate, but only rendered it liable to be defeated at the election of the grantor by an actual entry, or a claim where entry is impossible, and there was no evidence that the plaintiff had ever made a formal entry upon the land for the purpose of enforcing the forfeiture, or had ever done any act equivalent to an entry at common law, or to a continuous claim.

*Third.* Because the forfeiture of a breach of condition may be waived by the grantor, and the testimony of the plaintiff, Paul F. Hammond, showed that he knew of the alleged breach of condition at the time of said breach or within six days thereafter, and without notice of his intention to enforce the forfeitures, permitted the company to make large expenditures in the construction of its track upon the land in question, and as late as February, 1879, gave directions to the defendant company as to the changes which he desired to have made in the digging of the ditches and the construction of the water-ways, and after the

work had been done accepted it, and declared the same satisfactory, and by each of these acts waived the forfeiture and treated the title of the company as still subsisting.

*Fourth.* Because whatever the terms of a condition attached to an estate of freehold, the estate will continue notwithstanding a forfeiture, unless the forfeiture be enforced by an actual entry or a claim when entry is impossible, and an action for the recovery of real estate cannot serve as a substitute for an actual entry or its equivalent at common law.

III. The defendant will also move for a new trial on the following grounds:

*First.* Because his Honor refused to charge that the following language of the deed, " that the system of drainage shall remain the same as now, except that such ditches as have been filled up by the party of the second part, shall be re-opened by them, and ditches to remain of such a depth as to allow as heretofore the drainage of the land to the depth of five feet," does not create an estate upon condition, and the jury must find for defendant upon the first cause of action.

*Second.* Because his Honor refused to charge that even if the said words do create such a condition, the omission to perform the condition does not, *ipso facto,* determine the estate, but only renders it liable to be defeated at the election of the grantor, and the verdict of the jury on the first cause of action must be for the defendant, unless they find from the testimony that the plaintiff made a formal entry upon the land for the purpose of enforcing the forfeiture, or if he was deterred from entering upon the land by menaces or bodily fear that he made claim as near to the land as he could, for the same purpose, and with like forms and solemnities.

*Third.* Because his Honor refused to charge that forfeiture for breach of condition may be waived; that if the jury found from the evidence that the plaintiff knew of the improper construction of the water-ways and trestles, by means of which the ditches were obstructed and his drainage interfered with, at the time this was done, or soon afterwards, and did not enter on the land, or do any act equivalent to an entry at common law, but

B

permitted the company, without notice of his intention to enforce the forfeiture, to make large expenditures upon the land, and if they further found that the plaintiff, after breach of condition, instituted proceedings in the courts of Georgia to compel the company to dig the ditches to a proper depth, and to construct its waterways and culverts in a proper manner, and if they further found that the plaintiff, after the forfeiture, gave directions to the defendant company as to the changes which he desired to have made in the ditches and water-ways, he, by any or all of these acts, waived the forfeiture, and the verdict must be for the defendant upon the first cause of action.

That whether the acts above named are a waiver, does not depend upon the intention of the plaintiff to waive the forfeiture, but such waiver was the legal effect of doing the acts with a knowledge that the alleged condition had been broken. The question is one of fact and not of intention.

*Fourth.* Because his Honor refused to charge that, under the second cause of action, the jury could not find damages for anything done prior to the possession of the land by the present defendants; and, in assessing the damages, they must make allowance for whatever part thereof had been caused by the negligence of the plaintiff in not digging the ditches below the railroad tract.

*Fifth.* Because his Honor refused to charge that the measure of damages against the defendant (if the jury find they have been negligent) is the interest on the value of the land since October, 1878, at the rate of seven per cent., that is to say, according to the testimony, seven per cent. on $8000 for eighteen months, less the value of the crops raised on the lands during that time, which, according to the same testimony, was, during the two years, between $800 and $900.

*Sixth.* Because his Honor refused to charge upon the construction of the deed, and left it to the jury as a question of fact to decide whether the said deed was intended to convey to the Port Royal Railroad Company an estate on condition that the grantor's system of drainage was to be preserved as it then was, or to create a covenant which, if violated, gave him an action against the company, to be assessed by the jury.

*Seventh.* Because his Honor erred in charging the jury that if

they found " that the deed created an estate on condition, and that the condition had been broken, that the verdict should be for the land conveyed in the deed (for, on the breaking of the condition the title reverted,) and such damages as they might find that the plaintiff had sustained by the non-performance of the condition. Now, this question of condition is one of evidence. Did the plaintiff, Hammond, convey the strip of land to the railroad company on condition ? * * * From this deed and the evidence you have heard, the question for you is, what was intended by it ?" * * *

*Eighth.* Because his Honor erred in instructing the jury that " if both parties intended that unless the system of drainage, as it then was, should be preserved, or the land should revert to the plaintiff, then the plaintiff is entitled to recover, and your verdict must be for him for the land and such damages as you think, from the evidence, he has sustained."

Whereas, it is submitted that the plaintiff could not treat the clause in the deed, upon which he relied, as creating a " condition," the breach of which might be enforced by a forfeiture of the estate granted to the railroad company, and, at the same time, as a " covenant," the breach of which would entitle the plaintiff to maintain an action for damages.

*Ninth.* Because his Honor erred in charging the jury as follows : " In all these negotiations between the plaintiff to avoid this litigation and settle this dispute on amicable terms, is it a waiver ? You will decide these questions by the evidence. If it was a waiver the plaintiff is not entitled to recover. Has the plaintiff, in his interviews and by correspondence with Mr. Wilson, the president, or Mr. Fleming, the superintendent, waived his rights? Has he, by his litigation in the courts of Georgia or of the United States, waived his rights ? This is a question of fact, of which you are the judges, and the only judges."

Whereas, it is submitted that he should have charged that the plaintiff having, with full knowledge of the improper construction of the water-ways and trestles, by means of which his ditches were obstructed and his system of drainage interfered with, permitted the company, without notice of his intention to enforce the forfeiture, to make large expenditures upon the land, and

having subsequently instituted proceedings in the courts of Georgia to compel the Port Royal Railroad Company to specifically perform the "covenants of the deed," by digging its ditches to a proper depth, and constructing its culverts and water-ways in a proper manner, and to recover damages for the "breach of the covenants" of the said deed, and having filed his petition in the United States Court, praying the payment of the damages he had sustained by the breach of the "covenants" of the said deed up to the date of the decree, and for the removal of the obstructions to the plaintiff's drainage, and having, after the sale of the premises to the present company, given directions to its officers as to the changes he desired to have made, and having afterwards approved and accepted the work so done at his suggestion, and having addressed to the superintendent the letter dated March 5th, 1879, had waived the forfeiture and could not recover the land. These facts were all established by the uncontradicted testimony of the plaintiff and other witnesses, by his letter of March 5th, 1879, and by the records of the courts of Georgia and the United States, and their effect should have been ruled as a question of law.

*Tenth.* Because his Honor erred in charging the jury as follows: "Your next inquiry, if you find for the plaintiff, is, what are his damages? In deciding this, you will take into consideration all you have heard as to the value of the land, then and now. Has the railroad company injured the plaintiff, and if so, how much?"

Whereas, it is submitted that the present company, the defendant, could not be held liable for damages done to the plaintiff by the Port Royal Railroad Company, and the jury should have been told that they could only take into consideration such depreciation in the value of the land and other damages as had been caused by the unlawful or negligent acts of the defendant since October, 1878, when the property was conveyed to it. The failure to distinguish between the damage caused by the old and defunct company, and that caused by the defendant company, could not fail to confuse the jury, and was error on the part of the judge.

*Mr. S. Lord, Jr.,* for appellant.

I. Every fact which the plaintiff must prove to maintain his suit, and which the defendant has a right to controvert in his answer, must be distinctly averred.   *Code,* § 165; *Circuit Court Rules VIII.; Pom. on Rem.,* § 552, *note,* 575; *Bliss' Code Pl.,* §§ 121, 282, 283; 12 *S. C.* 1, 8; *Steph. on Pl.* 304; 1 *Chit. Pl.* 366; 1 *Add. on Torts* 247.

II. The seventh ground of appeal is alone decisive.

In refusing the motion for a non-suit, the court said : "This question of intent is one that may fairly be submitted to the jury, and while I am obliged to consider it in deciding this motion, I will take care that the jury shall be untrammeled when it is submitted to them."

Accordingly the court charged the jury : "From this deed and the *evidence you have heard,* the question for you is, what was intended by it ?"

*Mowry* v. *Stogner,* 3 *S. C.* 251, expressly rules that this is error, and upon this ground a new trial must be granted.

As, however, the inquiry as to the proper construction of the deed of 1872, and the effect of the plaintiff's acts in waiving the alleged breach of condition, will be conclusive of the case, it is desirable that the court should enter upon it now.   This was the course pursued in 11 *S. C.* 75, and if adopted it will save the delay and expense of another appeal.

The ruling question is, whether the deed of Hammond to the Port Royal Railroad Company created an estate upon condition. The presiding judge, on the motion for a non-suit, ruled that it did.

The clause relied on is susceptible of three constructions :

1. That it annexed a condition subsequent to the estate granted.

2. That it reserved to the grantor an easement.

3. That it created a covenant running with the land.

The rules which should govern the court in the determination of this question are well settled.   4 *Kent* 132; 15 *Penna.* 295.

As proper to frame a condition, certain words are recognized which, of their own nature and efficacy, without the addition of other words, are sufficient.   Among these, three are said to be

most appropriate to make an estate conditional, namely, "*pro-- viso,*" "*ita quod,*" and "*sub conditione.*" Now, in that clause of the deed particularly under review, we have the apt words, "upon the express conditions," and hence it will be argued that by the legal import necessarily attributable to them, the estate granted is a conditional interest. But this argument over- looks the well settled principle, "that these conditional words sometimes serve to work a qualification or limitation, and sometimes to make a covenant only, according to the *inten- tion* of the parties." 2 *Greenl. Cruise* 730, § 4; 2 *Pars. on Cont.* 526.

There is, therefore, no "rigid and unbending rule ascertained by settled authority" which requires the court to construe this clause as a condition. If the parties did not intend that there should be a condition, there is none. Now, to construe this clause as a condition, would entirely defeat this purpose. The benefit of a condition can only be reserved to the grantor or his heirs. It cannot be reserved to or assigned to a stranger, and the assignee of the reversion cannot enter for a condition broken. 4 *Kent* *122. If the grantor assigns the adjoining land and then enters, he holds the estate discharged of the condition and the owner of the land assigned derives no benefit from it. *Co. Lit.* 214 *a*, 214 *b*, 215 *b*; *Com. Dig., "Condition,"* A 6.

The only way, then, to effect the intent of the grantor, is to construe the clause under consideration as the reservation of an easement, or as a covenant running with the land conveyed to the railroad company.

We next inquire as to the presumed intention of the grantee. It is difficult to suppose that it could have been the intention of the company to accept a conveyance which would give the plain- tiff the right, if his ditches did not remain at the depth of five feet or "the cattle guards or the stop gaps" on the line of the road were not kept in constant or uninterrupted repair, to take possession of the premises and render its entire road from Port Royal to Augusta useless.

Such a condition would be clearly void as against public policy. 101 *U. S.* 71.

And the deed itself points to the conclusion, that by this

clause a covenant and not a condition, was intended, for the clause immediately preceding states the contingency on which the land was to revert to the grantor.

It is well settled " that where the words of an instrument are ambiguous, the court will call in aid *acts* done under it as a clue to the intention of the parties." *Broom's Max.* *300; 8 *Bing.* 178 ; 2 *Greenl. Cruise, ch. XXV.,* § 9 ; 9 *Paige* 427.

In the statement of facts the evidence is referred to, which shows that from the execution of the deed down to the bringing of this action, the plaintiff has invariably elected to treat the clause in question as a *covenant.* He is now concluded from averring that it is a condition.

III. But conceding that the estate granted was upon condition, and that it has been broken, the next inquiry is, has the breach been waived?

By the conveyance from Hammond the railroad company took a fee in the premises. Such is the legal effect of the language of the deed. The *habendum* is to the company and their successors and assigns forever. This fee, if plaintiff's construction be correct, was qualified by a condition subsequent. It is laid down by all the authorities that where a *freehold* estate is granted upon condition subsequent, the estate vests in the grantee, subject to be defeated by the omission to perform the condition. But the breach of condition does not (as his Honor charged,) *ipso facto* determine the estate. The grantor or his heirs may not choose to take advantage of the breach, and until they do so by entry or its equivalent, there is no forfeiture. 4 *Kent* 126 ; 2 *Bla. Com.* 155, and authorities *passim ;* 4 *Kent* 128.

As the condition is reserved for the benefit of the grantor, it is competent for him to waive the breach and treat the estate as still subsisting, " and as the rigorous execution of them is a species of *summum jus,* and, in many cases, hardly reconcilable with conscience." 4 *Kent* 128, 129. The inclination of courts is strongly in favor of giving every act or declaration of the grantor which evinces an intention to overlook the breach and treat the estate as still subsisting, the effect of a waiver, especially if attended by a lapse of time or any other circumstance which would

render it inequitable to enforce forfeiture. *Note to Dumpor's case,* 1 *Smith's L. Cas.* 97 ; 4 *Burr.* 2052 ; *Cowp.* 803 ; 12 *Barb.* 440 ; 5 *Ohio* 388 ; 35 *N. Y.* 208.

Applying these principles to this case, it is impossible to resist the conclusion that the petitioner has waived his right to insist upon a forfeiture of the estate granted to the railroad company.

The question of waiver was submitted to the jury as one exclusively of fact to be determined by them, and without the slightest explanation of the legal doctrines they were to apply. That this was error, is ruled in 2 *S. C.* 524.

IV. The next question in the case is, whether the plaintiff was bound to make an actual entry before he could maintain his action ?

It is of consequence to bear in mind the distinction between conditions subsequent annexed to an estate in fee, and the like conditions annexed to an estate for years. In the former, the *only* mode in which advantage can be taken of a breach is by entry, or, if that should be impossible, by claim. 1 *Greenl. Cruise* 504, § 9, and especially note 1 ; 2 *Washb. on Real Prop.* *452, § 16 ; 4 *Kent* 127.

The reason of the rule is stated with great clearness in 1 *Conn.* 87.

In those states in which the fictions of the English practice are dispensed with, an action of ejectment cannot be brought as a substitute for an actual entry. 5 *Serg. & R.* 375 ; 35 *Maine* 342 ; 18 *Conn.* 535 ; 57 *Ind.* 564 ; 11 *N. Y.* 315 ; 12 *N. Y.* 121.

The entry and claim referred to in these authorities is described by Blackstone.

In many states statutes have been passed dispensing with the necessity of actual entry. No act of this character can be found upon the statute books of this state. The plaintiff's title must, therefore, " be judged by the rules of the common law," and so judged, it is clear that until an actual entry, both the legal title and the right of possession were in the defendant when this suit was brought.

*Messrs. D. S. Henderson, M. C. Hammond* and the *Attorney-General,* contra.

*Mr. William Elliott,* in reply.

March 21st, 1881.   The opinion of the court was delivered by

SIMPSON, C. J.   In this case two causes of action were joined. In the first the plaintiff sued to recover a certain strip of land situate in the county of Aiken, in this state, the same being two hundred feet wide and one mile and one-half long, extending through the plantation of plaintiff, known as "Cathwood." This strip of land the plaintiff had previously sold to the Port Royal Railroad Company as a right of way, upon which to construct a portion of their railroad.   The deed conveying this strip of land to said company will be hereafter considered.   It may be stated here, however, that this deed was claimed by the plaintiff to be a deed upon conditions; that these conditions had been broken, and, therefore, that the title had been forfeited.   This action was brought to recover the land.

For the second cause of action the statement is as follows: "That said defendants having wrongfully taken possession of said tract of land aforesaid, had continued the construction and running a railroad through the same, and because of the negligent construction of said road-bed, the culverts, trestles and mudsills, so continued negligently and unlawfully, said defendants have damaged and almost completely destroyed the system of drainage which existed on the plantation of Cathwood aforesaid, by closing up and obstructing the ditches and canals which supported said system, thus causing to plaintiff the loss of his crop and great deterioration in the value of his lands, to the damage of plaintiff eight thousand dollars."

To the first cause of action the defendants answered, denying title in the plaintiff and claiming title themselves.

To the second defendants demurred, "on the ground that complaint does not state facts sufficient to constitute a cause of action." The case was heard before Judge Aldrich.   The first issue tried was the issue of law raised by the demurrer.   Judge Aldrich overruled the demurrer.   The defendants at once appealed, and

moved the court to proceed no further with the trial of the second cause of action.

There is some difference of recollection between counsel as to what occurred at this point; but the trial proceeded as to both causes of action. The defendants did not ask leave to file an answer when the demurrer was overruled, but distinctly refused. Upon the close of plaintiff's testimony defendants moved for a non-suit on the first cause of action, on grounds which will be found in the grounds of appeal. This motion was refused. The jury found for the plaintiff the land in dispute and $6046.11. The defendants appealed on the various grounds which will be referred to as far as may be necessary in the discussion which follows.

Should the demurrer have been sustained? is the first question for our consideration.

The complaint embraces two distinct causes of action; one for the recovery of a tract or strip of land and damages for its detention, and the other in the nature of an action on the case for damages done to real estate (other than this strip) by stopping up ditches, interfering with drainage, &c., &c., by defendants.

Under the old practice these two causes of action could hardly have been joined in one suit, but under the code this is allowable, and hence no objection was interposed on that account. But the demurrer was based on the ground that while two or more actions may be joined in one suit or complaint, yet that these different causes of action must each stand on its own statements, and must be considered as if no other was embraced, and upon demurrer each must be tested by what it contains, without help from any other count in the complaint. If this position can be sustained, then it will become necessary to test the second count by this rule. This question must turn upon the construction which must be given to the provisions of the code upon the subject of complaints.

The code, although it has been in use in this state since 1870, is still somewhat new to us. In our own decisions we have not as yet sounded its depths or reached its heights. Many questions have arisen elsewhere under it, which have not been presented to our courts. We have a right, it is true, to construe it

for ourselves, and this we propose to do as necessity may arise; but at the same time it will be our pleasure and duty to get all the aid we can from the decisions of able judges in other states, and especially from the labors of distinguished writers and annotators who have made the entire system the subject of earnest and profound study. Among these writers, Pomeroy and Bliss are, perhaps, the most prominent and most frequently quoted.

Mr. Pomeroy, in section 275 of his Remedies and Remedial Rights, says: " Where a complaint contains several counts, it is a settled rule that each separate division or count must be complete by itself, and must contain all the averments necessary to a perfect cause of action. Defects and omissions in one cannot be supplied by allegations found in another, nor can the pleader, by merely referring to material facts properly set forth in a former count, incorporate them into and make them part of a subsequent one. In other words, all issuable or material facts constituting the ground for a recovery must be stated in each cause of action, even though some repetition might thereby become necessary."

Mr. Bliss (section 121) says: " The presumption is that every statement embodies a cause of action altogether new, hence the rule that it must be complete in itself. It must contain all the facts which constitute the cause of action embraced in it, and its defects cannot be supplied from other statements. Although this reason is denied in Indiana, yet the requirement that each count shall contain the facts necessary to the cause of action, is rigidly enforced in that state, and a second count, which counted upon a mortgage, and referred to the land as described in the first, was held to be bad, on general demurrer, upon the ground that the court would not look outside the count for a description of the land. So imperative is the requirement that each statement should be complete, that when a statute requires that copies of the instrument upon which the action is based should be filed with the pleadings, it is held that where the same paper is made the foundation of a second count, it should be referred to as filed with that count also."

The same has been held in Wisconsin and New York. Bliss, 121: " Whenever a cause of action is attacked by a demurrer,

either against it alone or against the entire pleading, it must stand or fall by its own averments; it cannot be helped out by any facts, however sufficient in themselves, in another paragraph." *Pom.*, § 575; *Alendorff* v. *Bondley*, 2 *Wis.* 222.

So far as this matter has been discussed in other states, this rule seems to have been adopted and enforced with great strictness. At first it would seem to be harsh, rigid and extremely technical, and in conflict with the liberal tendencies of the code; but, upon consideration, it will be found based on correct principles and consonant with the true theory of pleadings. The code makes a considerable stride when it permits two or more different causes of action to be joined in the same complaint, and unless these different causes are kept separate and distinct, much confusion and complication must be the result. To prevent this, an orderly system of pleadings should be adopted, and to this end each action should be stated in a single and independent division, so that defendant might meet it without confusion with others, and each should contain all the averments necessary to raise the issues upon which the case is to be tried. This was always necessary under the old practice when actions could not be joined.

The facts constituting the cause of action were required to be stated in the declaration, not as a matter of mere form but as an essential element in the action, and without which it could not proceed; and there can be no reason why this should be dispensed with now because joinder is permitted.

In *Childers* v. *Verner & Stribling*, 12 *S. C.* 8, Mr. Justice McIver said : " The rule is that while a plaintiff may combine in one complaint several distinct causes of action, yet these different causes of action must be stated separately, in order that the defendant may plead to them separately, if necessary or desirable."

It would seem to follow as a necessary supplement to this that the causes thus stated separately should each contain, in itself, the necessary averments to support it. While the code has made great improvement in pleading in the adoption of a single form of action, and in cutting off much of its useless and unnecessary verbiage, yet, for the proper administration of the laws, some

symmetry and order should be preserved; and, in the absence of statutory regulations to that end, the court should mould the pleadings into proper shape. And upon this matter, and for this purpose, we are disposed to adopt the principles laid down by Pomeroy and Bliss, and the decisions in the other states, and hold that each count or statement of a cause of action in a complaint should contain, in itself, all the averments necessary to develop the issues involved.

Now apply this test to the statement of the cause of action attacked by the demurrer in this case. The wrong which the plaintiff seeks to have redressed by this action is an alleged injury to his Cathwood plantation, in Aiken county, caused by a serious interference on the part of the defendants with the ditches, canals and system of drainage, which, at great labor and expense, he had established thereon.

The only facts necessary to be stated in an action to redress this wrong are, *first*, that the plaintiff is the owner, and is in possession of the plantation injured; *second*, that the defendants have committed the injury complained of; *third*, that the premises are within the jurisdiction of the court. It is true that these facts are not as formally stated in the count as good pleading would require; but is there not enough to present these facts, and to show that they are relied upon as a cause of action, even without the help of any other count in the complaint?

It is certainly stated that the plantation injured is the Cathwood place. The system of drainage, which is alleged to have been destroyed, is referred to as being on that place. It is further alleged that the plaintiff's land and crops were injured, and no other land or place but the Cathwood place is mentioned. Is this not substantially an allegation that the plaintiff is the owner of the Cathwood place, and that it is the injury upon that place of which he complains?

The defendants are sufficiently charged with committing this injury, and the venue is laid in Aiken county. As we have already said, it is true that these allegations are not as distinctly and as formally set forth as they should have been; and this style of pleading should not be encouraged. But, on the other hand, as the plaintiff has alleged enough, by close inspection, to

bring his case before the court, and it is apparent that the defendants have not been taken by surprise, we think the Circuit judge should be sustained in his order overruling the demurrer.

By reasonable intendment the facts may be made out. Mr. Whitaker, quoting from *Zabriskie* v. *Smith*, 13 *N. Y.* 330, says: "It is sufficient that the requisite allegation can be fairly gathered from all the averments in the complaint, though the statement of them be argumentative and the complaint deficient in technical language."

On this branch of the case the defendants appeal, because the judge refused to charge that, under the second cause of action, " the jury could not find damages for anything done prior to the possession of the defendants."

It seems that the Port Royal company, the predecessor of defendants, went into possession in 1873, and continued in possession until some time in 1878. The obstruction to the ditches began soon after the company went into possession, and continued during the whole period of its possession. The plaintiff commenced action against the company in Georgia in 1879, and recovered verdict for the damages up to that date, which the jury at that time assessed at $3000. The verdict was set aside by the Supreme Court of Georgia for the want of jurisdiction. The plaintiff then commenced proceedings in the United States Court at Charleston. The motion was referred to a referee, who assessed the plaintiff's damages at $5640. That was May, 1878. The defendants went into possession in October, 1878, and the present action was instituted on the 20th of June thereafter.

The greater part of the damages to plaintiff, then, had accrued before defendant's purchase, and by the acts of others. The defendants were certainly not liable for injuries caused by the acts of other parties. There can be no doubt that the plaintiff has been greatly injured. This fact has been found by two juries, and also by a very competent referee. But there is no principle of law which can make one responsible for injuries which he had no agency in committing.

The judge charged the jury: "If you find for the plaintiff, your next inquiry is, what are his damages? In deciding this you will take into consideration all you have heard as to the

value of the land *then and now.* Has the railroad company injured the plaintiff—and, if so, how much?" This was calculated to mislead the jury, and, from their finding, they must have gone back behind the possession of defendants. We think the charge should have been more specific, and that the jury should have been confined, in accordance with the request of defendants to the damage resulting from defendants' acts.

As to the measure of damages, we see no error in the charge. Whether it should be measured by the rent of the land, the probable value of the crops that might have been grown, or the permanent deterioration of the land, one or all, was a matter for the jury, dependent upon the evidence. But in no event should the defendants have been made responsible for any injury except that occasioned by their own acts of commission or omission.

This brings us to the consideration of the grounds of appeal connected with the first cause of action. The prominent issue in that branch of the case is the title to the strip of land in dispute, and this must depend upon the construction which shall be given to the deed under which defendants claim. This deed is the deed of the plaintiff to the Port Royal company, through which the defendants claim. It is contended by plaintiff that this deed is a deed upon conditions, which conditions have been broken and violated, and, therefore, the title thereunder forfeited, and, on this account, the defendants cannot set it up. It would encumber this opinion too much to copy the deed in full. I shall, therefore, briefly state its conclusion. The *habendum* is: "To have and to hold the said strip    *    *    *    unto the said party of the second part, their successors and assigns forever: provided always, and this deed is upon the express conditions:

" 1. That the right of way is granted under the restrictions of the act of the general assembly of South Carolina, of September 22d, 1865, and, if abandoned, reverts back to the party of the first part.

" 2. That the system of drainage shall remain the same as now, except that such ditches as have been filled up by the party of the second part are to be re-opened by them, and ditches to remain of such a depth as to allow, as heretofore, the drainage of the land to the depth of five feet.

" 3. That whenever the road crosses the line of any fence or other enclosure of the party of the first part, the party of the second part shall construct and keep in repair proper and sufficient cattle guards or stock gaps. And provided further, that the said railroad may occupy a wider space."   \*   \*   \*

Estates upon condition are of feudal origin, and have come down to us from that remote day. They are treated of not only in Blackstone but are recognized in Kent and Washburn, and all the writers on real property, and also in the decisions of many of the states of the Union. They are not favored, but when created by the parties interested they have been sustained. The condition which is to affect the estate may be express or implied, and may be precedent or subsequent. Upon a precedent condition the estate may be commenced or enlarged, while a subsequent condition defeats an estate already vested.

In this case the conditions, if any, are subsequent, and we will confine our attention to that class. The intention of the parties must always govern as to the question whether an estate upon condition has been created; but that intention must be reached by interpretation or construction of the instrument in which it is alleged to exist. Testimony *dehors* the instrument cannot be allowed. Hence, it is always a matter for the court and not a matter of fact for the jury. The judge seems to have submitted this question to the jury. This was erroneous and must be reversed. *Mowry* v. *Stogner,* 3 *S. C.* 231.

The material question, however, in this deed is not met by this ruling. Does it create an estate upon condition subsequent? This court might avoid this question under the grounds of appeal, but inasmuch as the case is to go back to the court below it is important that we should pass upon it now.

Prominent among the forms of expression which create a condition in a grant or deed, as is found in all writers on this subject, are the following: " *Provided always, on condition.*" 4 *Kent* 122, 140; 2 *Washb. on Real Prop.* 3. These expressions, both, are found in this deed, and they have been held sufficient to create an estate upon condition, unless there is something in the deed to negative this idea. And inasmuch as estates upon condition working forfeiture are odious, the courts have generally laid hold of any plausible feature to sustain the deed.

But what is there in this deed to negative the idea that these expressions were used according to their usual, and, we might say, judicial interpretation, when found in a deed? It is said they imply a covenant running with the land. Covenants running with the land are covenants which bind the grantor. This is not a deed of indenture, but is a deed-poll, signed by the grantor alone, and how can the stipulations in this deed be made the covenants of the grantee? If Hammond had intended to rely for his protection upon a covenant by the grantee, would he not have taken a separate instrument, properly prepared and executed?

The fact that he did not do this affords a strong presumption that he preferred the right to enforce forfeiture as the most effectual means of protection. His system of drainage had been constructed at great expense, and it was natural that he should desire to throw around it the most effectual safeguard, and the danger of forfeiture, on the part of the company, was certainly the highest incentive that could influence the company to do its duty in the premises. When, then, Hammond has used the very terms which the books lay down as the special terms to be used to create such an estate, and when this was his interest, and nothing is found in the deed to negative the idea that it was also his purpose, why resort to implication? Why not take him at what he says? It seems to the court that it would be in violation of all rules of construction to hold otherwise than that this deed created an estate upon condition.

What is the effect of a subsequent condition? There is a broad and wide distinction between a condition and a limitation. A limitation upon a condition, or, in other words, a conditional limitation, is where the property is limited over to a third party in case the condition be not fulfilled, denominated by Littleton a condition in law. 1 *Inst.* 234. In such case the estate determines, *ipso facto*, that the contingency happens. But when the estate is upon a condition in deed, as in this case, the law permits it to endure beyond the happening of the contingency. It is voidable, but not void *ipso facto*. 2 *Bl. Com.* 155; 4 *Kent* 127.

Such conditions are not favored and must be construed strictly, and will, under no circumstances, be enforced further than may

be absolutely required, and so strong is this principle engrafted in the law that courts of equity will seldom lend their aid to divest an estate for the breach of a condition.    If parties, however, will make contracts involving such conditions, they must not expect to get relief by any interposition on the part of the courts. In *Hill* v. *Barclay*, 18 *Ves.* 56, Lord Eldon said : " Relief might be granted against a breach of a condition to pay money, but not where the breach of the condition consisted of acts of commission, *directly in the face* of it, and the law had ascertained the contract and the rights of the parties.    A court of equity could not interfere."

Estates upon condition are created for the benefit of the grantor and his heirs and no one else can take advantage of the condition, and the estate is not divested until the grantor acts.    The law, from the beginning, has prescribed the mode of action on his part.    In some of the American states this mode has been altered by statute ; not so, however, in South Carolina.

Both the estate and the mode of enforcing forfeiture originated together in feudal times, and though the reasons for their origin as to both have long since passed away, yet they were adopted together, and must stand or fall together, except so far as any state may have amended by statute.

Actual entry, or, if that be impossible, by claim, was the original mode of enforcing forfeiture.    This was a part of the very law authorizing the estates upon condition subsequent.    2 *Washb. R. P.*, § 16, 450 ; 4 *Kent* 127 ; 2 *Greenl. Cruise, ch. II.*, §§ 42, 45, *note* 1.    Mr. Washburn says that nothing short of an actual entry will serve to defeat an estate upon condition broken. *Finder* v. *Says*, 46 *Barb.* 123.    He adds : " It cannot be done by action, for, when the grantor conveyed, he parted with the seizin, which he can only regain by an entry made." *Shep. Touch.* 496 ; *Co. Lit.* 218 ; *Chalker* v. *Chalker*, 1 *Conn.* 79.    We have no authority which authorizes this court to modify this principle.

In an action to recover real estate, the plaintiff must have title when he begins his action.    In this case plaintiff parted with his title by the deed to the Port Royal company.    Has this title returned to him ?    Ordinarily a reconveyance would be necessary, but in deeds upon condition an entry upon breach of con-

dition will operate as a reconveyance; or if entry cannot be made, claim will be sufficient; either will do, but in the absence of both the title cannot return. The Circuit judge should have charged the jury that entry, or, if that was impossible, claim was necessary on the part of the plaintiff to divest the defendants of title.

We think there was no error on the part of the judge in submitting it to the jury as a question of fact, whether the plaintiff had waived his right to enforce forfeiture. All the authorities agree in the opinion that this is a right which may be waived. Whether it has been waived in a given case, is entirely a matter of intention on the part of the grantor, to be reached in each case by the special facts. In some cases it has been decided that long acquiescence after condition broken, standing by and permitting improvements, unexplained, and acts of that kind, might be relied on as evidence of waiver; but we know of no rule of law more certain or more explicit than to say that where the evidence shows an intention to waive this right, then this intention must govern, and when once the right is waived it is gone forever. *Washb.* and *Kent, supra.*

We do not think that considerations of public policy can enter into this case. The Port Royal company had the right, under the act of the general assembly, to condemn this strip of land, and take possession by virtue of the mode therein prescribed. If it saw proper to resort to a private agreement and purchase, we do not see that they can interpose the public interests as a shield against their positive and distinct contracts, especially as the conditions imposed were reasonable and proper, and do not appear to have been surrounded with any great difficulty in being met and discharged.

We think that the notice of appeal from the order overruling the demurrer should have stayed proceedings as to the second cause of action until the appeal was heard. *Code,* § 369.

The judgment below is reversed and the appeal sustained, and it being admitted that there was no evidence whatever showing entry or claim before action brought, the defendant's motion for non-suit as to the first cause of action should have been granted,

and the judge's order refusing this motion is reversed and the non-suit ordered.    The case is remanded for a new trial on the second cause of action.

McIVER and McGOWAN, A. J.'s, concurred.